HOBAN *v.* HALL, SECY. OF STATE.

5-1736                                    316 S. W. 2d 185

Opinion delivered September 29, 1958.

*Tom Gentry,* for plaintiffs.

*Bruce Bennett, Atty. General,* and *Roy Finch, Jr., Chief Asst. Atty. General,* for defendant.

GEORGE ROSE SMITH, J. By this original action the petitioners seek to enjoin the Secretary of State from certifying as sufficient a ballot title for a proposed constitutional amendment, to be voted upon at the general election in November. In substance the petition asserts that the ballot title is so incomplete and so abbreviated that it fails to convey sufficient information to enable an elector to vote upon the measure with intelligence and understanding.

The proposed amendment carries as its popular name "The States Rights Amendment" and has the following paragraph as its ballot title:

"An Amendment Creating a States Rights Commission and Providing For Its Duties, Qualifications and Operation; Defining an Offense of Barratry and Providing Penalty thereof; Providing for the Suspension of State Funds to School Districts in Certain Cases, the Redistribution of Public School Funds in Certain Districts, the Possible Closing of Schools and Creation of Private Schools in Certain Districts, and the Recall of

School Board Members, all of which to Be Determined by Special Elections of Qualified Voters; Regulating Voter, Candidate and Party Qualifications; Providing for Certain Penalties; Providing for a Severability Clause; and, Providing for a Repealing Clause.''

The amendment itself is of such extreme length and touches upon so many different subjects that we shall merely summarize the provisions deemed pertinent to this discussion, with the full text being set out as an appendix to the opinion. Even a casual reading of the measure will disclose that it is the most far-reaching proposal ever offered to the state's electorate.

Returning to the ballot title, one sees at once that its language is cast in generalities. The voter is told that the amendment is to create a States Rights Commission, but he is given no intimation of its powers or duties. He knows that the schools are to be affected ''in certain cases'' and ''in certain districts,'' but he is given no inkling of what those contingencies actually amount to. He realizes that he is to vote for or against changes in the election laws, but the ballot title supplies no clue as to the nature of those changes.

The single question is whether this ballot title meets the requirements of the constitution. The governing rules are well settled and perfectly familiar. The ballot title need not be a complete abstract of the act. *Coleman v. Sherrill,* 189 Ark. 843, 75 S. W. 2d 248. It must, however, provide the elector with information concerning the choice that he is called upon to make. *Bradley v. Hall,* 220 Ark. 925, 251 S. W. 2d 470. It was pointed out in our leading case, *Westbrook v. McDonald,* 184 Ark. 740, 43 S. W. 2d 356, 44 S. W. 2d 331, that ''the great body of electors, when called upon to vote for or against an act at the general election, will derive their information about it from the ballot title. This is the purpose of the title.''

Especially pertinent here is the decision in *Walton v. McDonald,* 192 Ark. 1155, 97 S. W. 2d 81, for it dealt with an error of omission. There the ballot title recited that the proposed m e a s u r e was an act to pro-

vide for the assistance of the aged and the blind, but it failed to state that this assistance was to be financed by the levy of a sales tax and by the appropriation of a third of the taxes upon horse and dog racing. In holding the title to be misleading and therefore insufficient we said: "The title carries an appeal to all humane instincts. Few would object to some provision being made for the support of the aged and blind; but to levy a general sales tax of two per cent, for that, or any other purpose, is a different question altogether, and would furnish the elector, however generous his impulses might be, serious ground for reflection if that information were imparted to him by the title of the question upon which he exercised his right of suffrage."

Our inquiry, then, is whether this ballot title conceals matters which, if disclosed, would furnish the elector with "serious ground for reflection" before yielding to his impulse to vote in favor of an amendment ostensibly furthering the cause of states' rights. After carefully studying the measure as a whole we are unanimously of the opinion that this ballot title fails to supply the voter with the information that the constitution expects him to have. For brevity we shall discuss only the provisions concerning the proposed commission and the election laws.

With respect to the commission the ballot title merely tells the elector that the measure will create a States Rights Commission and provide for its duties, qualifications, and operation. The cause of states' rights, like that of the aged and the blind, is deservedly a popular one and undeniably appeals to the great body of the electorate. But are there provisions in the amendment which, if made known, would give the voter serious ground for reflection?

We have no doubt that there are. The Commission, created by Article I of the measure, consists of twelve members. Sections 5 and 6 of this article destroy the system of checks and balances that has characterized our government since its birth. Section 5 provides that no court shall be empowered to enjoin the Commission

from performing the duties set out in the amendment. Those duties, however, are not clearly defined. By § 7 the Commission is invested with the duty and the power to "perform any and all things deemed necessary and proper" to protect the sovereignty of the several states and to resist the usurpation of the rights reserved to the states. Within the vague limits of this clause it is difficult to conceive of any power — legislative, executive, or judicial — that the Commission might not lay claim to. The ballot title, it may be observed, does not even mention the powers of the Commission, much less does it give a hint of their unlimited scope.

Having immunized the Commission from the action of the state courts, the amendment next frees it from the control of the state legislature. It has traditionally been the function of the legislative branch to exercise some measure of restraint over the other departments, through its power to enact laws and to control the public purse. But here that restraint is swept away. Since the Commission's powers would be conferred by the constitution, they could not be affected by any laws that might be passed. And by § 6 the General Assembly is deprived of any financial supervision over the Commission. This section makes an annual appropriation of $250,000, which the Commission is at liberty to spend in any way it chooses. It may be noted that the General Assembly, in creating a State Sovereignty Commission that superficially resembles the proposed States Rights Commission without the latter's u n b r i d l e d powers, deemed an annual appropriation of $30,000 to be sufficient. Acts 83 and 170 of 1957. It will also be observed that the ballot title does not suggest to the voters that a quarter of a million dollars is to be appropriated every year, without any effective safeguard over its expenditure.

It is really not enough to say that the proposed Commission would have equal status with the other branches of the state government; the amendment contemplates that every other department shall be subservient to the Commission. Section 10 of Article I requires all elective and appointive officers and employees of the state and

its subdivisions to cooperate with the Commission and to render such aid and assistance as may be requested by the Commission. By Article V if any person, public official, or employee of the state fails to carry out "the clear mandates" of the amendment he is subject to a fine of not more than $5,000, to imprisonment for not more than a year, and to automatic forfeiture of his office. It is obvious that under the measure before us every public officer and employee in the state, without exception, would live in daily fear of offending the Commission.

Nor is the private citizen to be left untouched by the unlimited powers of the Commission. By §§ 8 and 9 of Article I the Commission is given broad authority to make investigations and to conduct public or secret hearings. It is evident that in the exercise of its inquisitorial power the Commission might interrogate any citizen in the state about his business affairs, his private life, his political beliefs, or any other subject that can be imagined. Although the measure purports to preserve certain fundamental rights of witnesses called before the Commission, these provisions are meaningless in view of the Commission's immunity from the action of the judiciary. The blunt truth is that, however improper the Commission's inquiries might be, the witness's only choice would be to answer the questions or go to jail for contempt.

We have said enough, we think, to demonstrate beyond any question that, with respect to the proposed Commission, the ballot title fails to disclose essential facts that the voter is entitled to know before making up his mind. Much the same situation exists with reference to the changes in the election laws that would be brought about by the measure.

On the latter subject the ballot title simply tells the elector, in six words, that the amendment will regulate voter, candidate, and party qualifications. In fact, however, the proposal embodies such extensive innovations in the election laws that we cannot conscientious-

ly suppose that the average voter would regard them as immaterial.

In addition to lengthening the period of residence required for qualified electors the measure introduces novel conditions to the right to vote. Section 5 of Article IV specifies that an elector must be ''of good moral character,'' that he understand the duties and obligations of citizenship under a republican form of government, and that he be able to read and write. It is evident that vague tests such as these leave much to the discretion of the election officers, who are in a position to disqualify any one they choose. Another change in the election laws is a requirement that an applicant for registration give his or her date of birth and exact age in years, months, and days. We have no doubt that this demand would be so distasteful to a substantial number of men and women that they would forego their right to vote rather than comply with this requirement. Yet the ballot title gives no information about these various amendments to the election law.

The wisdom of the measure does not, of course, concern the courts, for the people undoubtedly have the right to amend the constitution in any way they like. It is our duty, however, in a case of this kind, to approve the ballot title only if it represents an impartial summation of the measure and contains enough information to enable the voters to mark their ballots with a fair understanding of the issues presented. Tested by this standard, the ballot title now before us is clearly insufficient.

The petition for an injunction is accordingly granted.

## APPENDIX

### (Full Text of the Proposed Amendment)

BE IT ORDAINED BY THE PEOPLE OF THE STATE OF ARKANSAS THAT THE FOLLOWING BE ADOPTED AS AN AMENDMENT TO THE CONSTITUTION:

## Article I—States Rights Commission.

Section 1. Communism, being an ideology with its purpose to destroy the freedom and liberty of all people throughout the world, its major weapon being the fomentation of strife and disharmony calculated to turn class against class and race against race, thereby upsetting time honored social patterns which have been attained in this country, not by prejudice but by a background of rich experience, all of which interferes with the exercise of rights reserved to the states; therefore, Communism is hereby declared to be against the public policy of the State of Arkansas.

Section 2. There is hereby created the States Rights Commission, which shall be composed of:

The Governor, the Attorney General, the Lieutenant Governor and Speaker of the House of Representatives, each of whom shall be an ex-officio member.

Three citizens of Arkansas who shall be appointed by the Governor; one of whom shall reside East of White River; one of whom shall reside South of the Arkansas River; and one of whom shall reside West of the White River and North of the Arkansas River;

Two members of the State Senate who shall be appointed by the President of the Senate by and with the approval of at least eighteen (18) members of the Senate;

Three members of the State House of Representatives who shall be appointed by the Speaker of the House of Representatives by and with the consent of at least fifty-one (51) members of the House of Representatives; one of said appointees shall reside South of the Arkansas River; one of them shall reside East of the White River, and one of them shall reside North of the Arkansas River and West of the White River.

The ex-officio members of the Commission and members from the Senate and House of Representatives shall serve during the terms of their respective offices and until their successors are elected and qualified. The

members appointed by the Governor shall serve during the term of the Governor who appointed them and until their successors are appointed and qualified.

Section 3. The Governor shall be Chairman of the Commission, and the President of the Senate Vice-Chairman, with authority to act in the absence of the Chairman. Seven (7) members of the Commission shall constitute a quorum for the transaction of business.

Section 4. The Commission shall meet not less than one day each month and at such other times as the majority of the members shall deem it necessary. Should any member willfully fail and refuse to attend two consecutive meetings without reasonable cause, such member shall be removed from said Commission and from any other office he or she might hold under and by the authority of the State of Arkansas.

Section 5. No court in the State of Arkansas shall be empowered to enjoin the Commission from the performing of its duties as set out in this Amendment.

Section 6. The Commission may employ a secretary and such other legal, professional, expert, secretarial, clerical and other help deemed necessary and proper to carry out the objectives and purposes of this amendment; and it is hereby authorized and empowered to fix the compensation for such employees at any reasonable amount, and pay such other fees as from time to time may be required. Ex-officio members of the commission shall serve without remuneration in addition to that otherwise received by them from the State. Other members of the Commission shall receive $35.00 per day for each day spent on the business of the Commission. All members of the Commission shall be reimbursed for actual living and travel expenses incurred by them. In order to defray the expenses of the Commission, the Treasurer of the State shall, before the end of the first quarter of each fiscal year, set aside and credit to a fund hereby designated ''The States Rights Commission Fund'' the amount of $250,000, which fund shall be drawn on by the Commission to meet its expenses. The Treasurer shall deduct the amount of this

fund from money received by him, that would otherwise be credited to the General Revenue Fund. Nothing herein shall be construed to prohibit the Commission from receiving and expending additional funds by way of private gifts or appropriations by the General Assembly. Full and complete accounting shall be kept and made by the Commission of all funds received and expended by it. The state auditors shall annually audit the expenditures of all funds received by the Commission from all sources.

Section 7. It shall be the duty of the Commission, and it shall have power in the name of the State of Arkansas or any political sub-division thereof, to perform any and all acts and things deemed necessary and proper to protect the sovereignty of the State of Arkansas and her sister states from encroachment thereon by the Government of the United States, or by any government of any nation, or federation of nations, or any branch or department or agency thereof, and to resist the usurpation of the right and the powers reserved to this State or her sister states by such governments, branches, departments or agencies.

Section 8. The Commission may make investigations and/or hold hearings (whether public or in executive session) in connection with any investigation made by it pursuant to the provisions of this Amendment. Witnesses at Commission hearings shall have the right to be accompanied by counsel of their own choosing, who shall have the right to advise witnesses of their rights, and to make brief objections to the relevancy of questions and to procedure. At least twenty-four (24) hours prior to his testifying, a witness shall be given a copy of that portion of the motion or resolution scheduling the hearing which copy shall state the subject of the hearing; and at the same time he shall be given a statement of the subject matter about which he is to be interrogated. The privileged character of communication between clergyman and parishioner, doctor and patient, lawyer or accountant and client, and husband and wife, shall be scrupulously observed. Every witness who tes-

tifies in a hearing shall have a right to make an oral statement and file a sworn statement which shall be made a part of the transcript of such hearing, but such oral or written statement shall be limited to material relevant to the subject of the hearing.

Section 9. The Commission shall have power to issue subpoenas for witnesses to appear at hearings conducted by the Commission, and to issue subpoenas *duces tecum* directed to witnesses. Subpoenas shall be issued by the Chairman or Vice-Chairman of the Commission only, upon written notice to all members of the Commission, with a statement as to the identity of the witness or material and their relevancy to the investigation or hearing already authorized. Upon request of any member of the Commission, the question of whether a subpoena shall be issued or remain in force if already issued, shall be decided by a majority vote.

In case of contumacy or refusal to obey a subpoena issued by the Commission, any Circuit Court of the State of Arkansas within the jurisdiction of which the investigation or hearing is to be carried on, or within the jurisdiction of which said person guilty of contumacy or refusal to obey is found, or resides, or transacts business, shall, upon application of the Chairman or Vice-Chairman of the Commission, have jurisdiction to issue to such person an order requiring such person to appear before the Commission, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation; and any failure to obey such order of the Court may be punished by said Court as contempt thereof.

The Chairman, Vice-Chairman or Secretary of the Commission is hereby authorized and empowered to administer oaths to witnesses; and any witness appearing and testifying before the Commission who shall willfully and corruptly testify falsely to any material fact shall be guilty of perjury and shall be subject to prosecution and punishment therefor as provided by law; and if such perjury be manifest, or if the witness shall refuse to testify, or to produce any books, records, papers or

documents, he shall be guilty of contempt of the Commission and shall be punished in cases of contempt of the Circuit Court of the State of Arkansas.

Any person sworn and examined as a witness before said Commission without procurement or contrivance on his part shall not be held to answer criminally or be subject to any penalty or forfeiture for any fact or act touching which he is required to testify; nor shall any statement made, or book, paper or document produced by any such witness be competent evidence in any criminal proceeding against such witness other than for perjury in delivering his evidence. Should any witness refuse to testify to any fact, or refuse to produce any book, document or paper touching which he is to be examined, on the ground that he will thereby incriminate himself, or that it will tend to discredit or render infamous, the Commission shall consider such refusal as part of the evidence and shall inform the public of the refusal of such witness to so testify, and the facts and circumstances under which such refusal was made.

Section 10. All elective and appointive officers and employees of the State and the political sub-divisions thereof, including all public schools, and institutions of higher learning, shall co-operate with the Commission and render such aid and assistance as may be requested by them by the Commission.

Section 11. All persons, corporations, societies, organizations and other groups of persons who are found by a majority of the members of the States Rights Commission to be engaged in activities designed to further the cause of Communism shall be declared subversive and shall be required to file with said Commission a complete report of their activities within the State of Arkansas, including a list of names and addresses of their officers and members, a detailed certified financial report showing names and addresses of their contributors and expenditures, and such other information as the General Assembly shall require.

## Article II—Barratry

Section 1. Any lawyer who shall represent himself to be an attorney for any person, corporation, society, organization or other group of persons who are engaged in activities which foment racial unrest, without having been personally and specifically solicited and employed by said client or clients such attorney holds himself out to represent, or if such attorney or anyone acting in his behalf solicits said client or clients, said attorney shall be deemed guilty of barratry and in addition to the penalties provided by the General Assembly shall be disbarred and forever prohibited from the practice of law in the State of Arkansas.

## Article III—School Requirements

Section 1. No state funds shall be allocated to school districts in which the Negro and Caucasian races are mixed in classrooms, athletic or social activities in any school or schools within said district, except that such mixing of the Negro and Caucasian races shall have been sanctioned by a prior affirmative vote of the majority of the qualified electors in such district.

Section 2. Any school against which a decree, order or proclamation of any court or executive has been rendered, or shall be rendered, causing the mixing of Negro and Caucasian students, and any school or schools from which the students were transferred or were to be transferred in compliance with such decree, order or proclamation, shall be closed forthwith from and after the effective date of this Amendment.

Upon the closing of such school or schools an election shall be held at the earliest possible date in said school district to determine whether or not the qualified electors in said district are for or against mixing of the Negro and Caucasian races in their public schools. Should the majority of the qualified electors in said district favor mixing of the Negro and Caucasian races, the school or schools would be reopened upon an integrated basis. Should less than a majority of the qualified electors in said school district vote to mix the

Negro and Caucasian races, then the affected school or schools, both Negro and Caucasian in said district shall be closed, and the physical plants and equipment of such shall be sold or leased for operation of private schools.

Section 3. The tax monies and state aid over and above that portion of said funds set aside for the retirement of bonded indebtedness of such schools shall be divided *pro rata* among the educable children of school age, regardless of color, who were former students of such affected schools, or who reside in the attendance area of such affected schools. Said money shall be used only for the education of said children, in schools meeting the minimum accreditation standards.

Section 4. Nothing in this amendment shall disturb the status of teacher tenure or teacher retirement benefits.

Section 5. Upon petition of not less than ten per cent (10%) of the qualified electors in any school district in the State of Arkansas, all elected school officials within said school district named in said petition, shall stand for re-election at a special election; the ticket shall be open for other electors to qualify as candidates. Such special election shall be held not later than one month after certification of the recall petition by the county clerk. In no event shall more than one such special election be held in any calendar year.

Section 6. All contracts for school personnel shall be entered into subject to ratification by the school board as it may be constituted following any special election under the provisions hereof.

## Article IV—Voting Privileges

### Candidate and Party Qualifications

Section 1. The right to vote in Arkansas shall be subject to the provisions of this amendment; provided, however, nothing herein shall be construed as repealing the Poll Tax requirements.

Section 2. Every citizen of this State and of the United States native born or naturalized, not less than twenty-one years of age, and possessing the following qualifications, shall be an elector, and shall be entitled to vote at any election in the State by the people.

Section 3. Each voter shall have been an actual *bona fide* resident of the State of Arkansas for two years, of the County one year, of the municipality in municipal elections four months, and of the precinct in which he offers to vote three months next preceding the election; provided, that removal from one precinct to another in the same county shall not operate to deprive any person of the right to vote in the precinct from which he has removed until three months after such removal; provided, further, that removal from one county to another shall not deprive any person of the right to vote in the county from which he has removed for district officers to be elected in a district which includes the county to which he has removed, or for state officers, whether the county be in the same district or not, until he shall have acquired the right to vote for such officers in the county to which he has removed.

Section 4. Each voter shall be, at the time he offers to vote legally enrolled as a registered voter on his own personal application, in accordance with the provisions of this Constitution, and the laws enacted thereunder.

Section 5. Each voter shall be of good moral character and shall understand the duties and obligations of citizenship under a republican form of government. He shall be able to read and write, and shall demonstrate his ability to do so when he applies for registration by making, under oath, administered by the registration officer or his deputy, written application therefor, in the English language, which application shall contain the essential facts necessary to show that he is entitled to register and vote, and shall be entirely written, dated and signed by him, except that he may date, fill out, and sign the blank application for registration hereinafter provided for, and, in either case, in the presence of the

registration officer or his deputy, without assistance, or suggestion from any person or any memorandum whatever, other than the form of the application hereinafter set forth; provided, however, that if the applicant is unable to write his application by reason of physical disability, the same shall be written at his dictation by the registration officer or his deputy, upon oath of such disability.

The application for registration above provided for shall be a copy of the following form with the proper names, dates and numbers substituted for the blanks appearing therein, to-wit:

"I am a citizen of the United States and of the State of Arkansas. My name is Mr. ........................ Mrs. ........................ Miss ........................ I was born in the state (or country) of ........................, County of ........................ on the ........ day of ........................ in the year ......................... I am now ........ years, and ........ months and ........ days of age. I have resided in Arkansas since ........................, in the county since ........................, and in Precinct No. ........................, in Ward No. ........................ of this county continuously since ......................... I am not disfranchised by any provision of the Constitution of this State. The name of the householder at my present address of ........................ is ........................ My occupation is ......................... My color is ......................... My sex is ......................... I am not now registered as a voter in any other ward or precinct of this State, except ......................... My last registration was in Ward ........................ Precinct ........................, County ......................... I am now affiliated with the ........................ Party.

........................................................
                                    Signature
Sworn to and subscribed before me:

........................................................
              Registration Officer"

Section 6. Each voter must in all cases be able to establish that he is the identical person whom he rep-

resents himself to be when applying for registration, and when presenting himself at the polls for the purpose of voting in any election, or primary election. At any time of voting he must present his registration certificate for identification. In all instances of voting in any election or primary election the election officials must make proper notation on the elector's registration certificate as to time and polling place of his appearance and as to the propriety of his party affiliation.

Section 7. The General Assembly shall enact laws to secure fairness in party primary elections, conventions, or other methods of naming party candidates. No person shall vote at any primary election, or in any convention, or other political assembly held for the purpose of nominating any candidate for public office, unless he is at the time a registered voter, and a certified member of the political party holding such election, convention, or assembly, and has such other and additional qualifications as may be prescribed by the party of which candidates for public office are to be nominated. All ballots in any election or primary election must designate the race — either Caucasion or Negro — of all candidates appearing thereon. And in all political conventions in this State the apportionment of representation shall be on the basis of population. No person shall be chosen as a delegate by any political party in this State to represent such party in any convention, local, state or national unless such delegate is a duly qualified elector under the provisions of this amendment. No provision of this amendment shall be construed as, nor shall any laws be passed by General Assembly, prohibiting or unreasonably restricting the formation of additional political parties, or binding any political party in this State to any national political party bearing the same name.

Section 8. Any person possessing the qualifications for voting prescribed by this amendment, who may be denied registration, shall have the right to apply for relief to the Circuit Court for the county in which he offers to register. Said court shall then try the cause, giving

it preference over all other cases, before a jury of twelve, nine of whom must concur to render a verdict.

Any duly qualified voter of this State shall have the right to apply to the Circuit Court to have stricken off any names illegally placed or standing on the registration rolls of any county within the jurisdiction of said court; and such application shall be tried by preference before a jury of twelve, nine of whom must concur to render a verdict. Such application hereinabove provided for shall be without cost.

Section 9. The following persons shall not be permitted to register, vote or hold office or appointment of honor, trust, or profit in this State, to-wit: Those who have been convicted of any crime which may be punishable by imprisonment in the penitentiary, and not afterwards pardoned with express restoration of franchise; those actually confined in any public prison or county farm; all interdicted persons, and all persons notoriously insane or idiotic, whether interdicted or not.

Section 10. The General Assembly shall further implement this amendment by appropriate legislation. The qualifications herein provided for are in addition to other qualifications as are now required by law except those laws in conflict herewith.

## Article V—Penalties

Section 1. No person, public official or employe of the State of Arkansas or of any political subdivision thereof, shall have immunity from arrest, prosecution and trial for the violation of the provisions of this amendment or penal laws the General Assembly shall provide for the willful failure and refusal to carry out the clear mandates of this amendment, and in addition to the penalties, shall automatically forfeit his or her office.

Section 2. Any person, public official, or employee of the State of Arkansas or of any political subdivision thereof, who shall wilfully fail and refuse to carry out the clear mandates of this amendment shall be deemed guilty of a misdemeanor and shall be punished by a fine

of not more than $5,000.00 or imprisonment for not more than twelve (12) months, or by both such fine and imprisonment.

## Article VI—Severability

Section 1. If any section, paragraph, sentence or clause of this amendment shall be held to be unconstitutional or invalid, the same shall not affect any other part, portion or provision of this amendment, but such other part shall remain in full force and effect.

## Article VII—Repealing Provision.

Section 1. All parts of the Constitution of the State of Arkansas in conflict with this amendment be, and the same are, hereby repealed.