Oscar Stilley Central Mall Plaza Suite 516 5111 Rogers Avenue Fort Smith, AR 72903-2041
Dear Mr. Stilley:
This is in response to your request, pursuant to A.C.A. § 7-9-107 (Repl. 1993), for certification of a popular name and ballot title for a proposed amendment to the Arkansas Constitution. You previously submitted a proposed popular name and ballot title for the measure in question, which resulted in the issuance of Op. Att'y. Gen. 99-198. In that Opinion, I rejected both your proposed popular name and ballot title due to several unresolved ambiguities in the text of your measure. Since the issuance of that Opinion, you have made several changes to the text of your measure and your proposed popular name and ballot title. You now seek certification of the following popular name and ballot title:
 POPULAR NAME AN AMENDMENT TO LIMIT THE SALARIES AND BENEFITS OF PUBLIC SERVANTS, TO REQUIRE THAT RETIREMENT FUNDS FOR PUBLIC SERVANTS BE KEPT IN SEGREGATED ACCOUNTS, TO PROVIDE PROCEDURES FOR THE RECOVERY OF ILLEGAL COMPENSATION OR EXPENDITURES, AND FOR OTHER PURPOSES.
 BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION LIMITING THE SALARIES OF PUBLIC SERVANTS TO $100,000 PER YEAR, AND PROVIDING FOR FRINGE BENEFITS FOR ALL PUBLIC SERVANTS IN THE AMOUNT OF 25% OF DIRECT COMPENSATION; PROVIDING THAT THE TERM "PUBLIC SERVANTS" SHALL FOR PURPOSES OF THIS AMENDMENT MEAN ALL OFFICERS OR EMPLOYEES OF THE STATE OF ARKANSAS, ITS INSTITUTIONS, AGENCIES, OR SUBDIVISIONS, PAID IN WHOLE OR IN PART FROM STATE OR LOCAL TAXES, FEES, FINES, PENALTIES, TUITION, OR RENTS OF STATE OR LOCAL PROPERTY, BUT NOT PERSONS WHOSE COMPENSATION IS FIXED BY CONSTITUTIONAL AMENDMENT AS A PERCENTAGE OF THE NET SAVINGS TO THE PUBLIC TREASURY, AND/OR A PERCENTAGE OF THE NET PROFITS OF A STATE AGENCY; PROVIDING THAT PUBLIC SERVANTS WHO WORK LESS THAN 50 WEEKS OF ACTUAL WORK PER YEAR SHALL RECEIVE SALARY NOT TO EXCEED $2,000 PER FULL WEEK ACTUALLY WORKED; PROVIDING THAT PERSONAL SERVICES CONTRACTS SHALL NOT BE USED TO EVADE THE LIMITATIONS OF THIS AMENDMENT; PROVIDING THAT THE SALARY LIMITATIONS MAY BE INCREASED OR DECREASED BY POPULAR VOTE AT REGULARLY SCHEDULED STATEWIDE ELECTIONS, BY LEGISLATIVE REFERENDUM OR BY INITIATIVE; PROVIDING THAT NOTHING HEREIN SHALL BE CONSTRUED TO LIMIT THE PAYMENT OF ADDITIONAL SALARY OR BENEFITS TO PUBLIC SERVANTS, OUT OF CONTRIBUTIONS FROM THE PUBLIC DESIGNATED FOR THE PURPOSE OF SALARY ENHANCEMENT (SUBJECT TO ETHICAL CONSTRAINTS), NOR TO PROHIBIT PUBLIC SERVANTS FORM EARNING EXTRA MONEY IN PRIVATE SECTOR EMPLOYMENT, OUTSIDE THE NORMAL WORKING HOURS OF SAID PUBLIC SERVANT; PROVIDING THAT THE GENERAL ASSEMBLY MAY MAKE REASONABLE LAWS GOVERNING THE PAYMENT OF EXTRA SALARY, OR WORK OUTSIDE THE NORMAL WORKING HOURS OF A PUBLIC SERVANT, TO THE EXTENT NECESSARY TO PROTECT THE INTERESTS OF STATE GOVERNMENT; DEFINING "FRINGE BENEFITS" AS ALL PUBLIC FUNDS PAID FOR RETIREMENT PLANS OR ACCOUNTS (WHETHER OR NOT MANDATED BY LAW), PAY FOR HOLIDAYS, VACATIONS, OR SICK LEAVE; AND ALL OTHER BENEFITS PROVIDED TO OR FOR THE BENEFIT OF THE PUBLIC SERVANT, CALCULATED AT THE REASONABLE COST OF PROVIDING THE BENEFIT, BUT EXCLUDING UNPAID LEAVE OR BENEFITS PROVIDED PRIMARILY FOR THE BENEFIT OF THE EMPLOYER; PROVIDING THAT FRINGE BENEFITS SHALL NOT COUNT TOWARD ANY SALARY CAP; REQUIRING THAT ALL RETIREMENT ACCOUNTS BE MAINTAINED ON AN ACTUARILY [SIC] SOUND BASIS IN SEGREGATED ACCOUNTS MAINTAINED FOR THAT PURPOSE; PROTECTING THE RIGHTS OF PUBLIC SERVANTS HOLDING VESTED RIGHTS IN RETIREMENT PLANS; PROVIDING THAT VESTED BUT LESS THAN FULLY FUNDED RETIREMENT ACCOUNTS FOR PUBLIC SERVANTS BE FULLY FUNDED AS SOON AS POSSIBLE; PROVIDING THAT ALL RETIREMENT PLANS FOR STATE OR LOCAL PUBLIC SERVANTS HIRED AFTER JULY 1, 2001, SHALL BE MAINTAINED IN APPROVED PRIVATELY MANAGED RETIREMENT ACCOUNT(S) AS MAY BE CHOSEN BY THE PUBLIC SERVANT; PROVIDING THAT ANY PERSON PAYING ANY PART OF ANY LOCAL TAX, WHETHER DIRECTLY OR INDIRECTLY, MAY MAINTAIN SUIT TO RECOVER BACK ANY ILLEGAL EXPENDITURES FOR WHICH THE TAX IS USED; PROVIDING THAT THE STATUTE OF LIMITATIONS ON ALL SUCH ILLEGAL EXACTIONS SHALL BE FIVE YEARS; DEFINING, FOR PURPOSES OF THIS AMENDMENT, THE TERM "FUNDS" OR "EXPENDITURES" TO INCLUDE MONEY, GOODS, SERVICES, OR OTHER VALUABLE CONSIDERATION OBTAINED AT THE EXPENSE OF THE TREASURY OF THE AFFECTED PUBLIC ENTITY, WITH OR WITHOUT OFFICIAL APPROVAL, AND EXPRESSLY INCLUDING THEFT AS CONSTITUTING AN ILLEGAL EXACTION; PROVIDING FOR JOINT AND SEVERAL LIABILITY AGAINST ALL PERSONS OR ENTITIES WHO RECEIVED UNLAWFUL FINANCIAL OR PERSONAL BENEFIT, WHERE TWO OR MORE PERSONS ACT TOGETHER TO CAUSE AN ILLEGAL EXPENDITURE; PROVIDING THAT IN ALL CASES AGAINST ILLEGAL EXPENDITURES OF PUBLIC FUNDS, THE ATTORNEY REPRESENTING THE TAXPAYERS AND CITIZENS SHALL BE ENTITLED TO A REASONABLE ATTORNEY'S FEE, NOT LESS THAN 25% OF ANY COMMON FUND RECOVERED OR PRESERVED FOR THE TAXPAYERS, AND FURTHERMORE SUFFICIENT TO ENCOURAGE REPUTABLE ATTORNEYS TO TAKE SUCH CASES; PROVIDING THAT THE NAMED PLAINTIFF OR PLAINTIFFS WHO BROUGHT SUIT SHALL BE ENTITLED TO 5% OF ANY COMMON FUND RECOVERED; PROVIDING THAT THE RULES HEREIN CONCERNING LAWSUITS AGAINST ILLEGAL EXPENDITURES SHALL BE EFFECTIVE IMMEDIATELY AND CONTROL ANY ACTION BROUGHT TO JUDGMENT AFTER THE PASSAGE OF THIS AMENDMENT; PROVIDING THAT ANY OFFICER OR EMPLOYEE OF THE STATE OR ANY OF ITS AGENCIES, SCHOOL DISTRICTS, OR SUBDIVISIONS, MAKING UNLAWFUL PROFIT OUT OF PUBLIC MONEYS, OR USING THE SAME FOR ANY PURPOSE NOT AUTHORIZED BY LAW, SHALL BE PUNISHED AS MAY BE PROVIDED BY LAW, BUT THAT PART OF SUCH PUNISHMENT SHALL BE DISQUALIFICATION FROM THE HOLDING OF ANY PUBLICLY FUNDED EMPLOYMENT OR OFFICE WITHIN THIS STATE FOR A PERIOD OF FIVE YEARS; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING PROVISIONS; PROVIDING THAT THE AMENDMENT IS SELF-EXECUTING AND SHALL TAKE EFFECT JULY 1, 2001, EXCEPT AS OTHERWISE PROVIDED; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must again reject both your proposed popular name and ballot title due to a remaining unresolved ambiguity in the text of your measure. There are a number of additions or changes to your popular name and ballot title which in my view are necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate without the resolution of this ambiguity. I am therefore unable to substitute and certify a more suitable and correct ballot title under A.C.A. § 7-9-107 (b).
The ambiguity to which I refer is found in Section 5 of your proposed amendment, which provides as follows:
 Henceforth, all retirement accounts or plans for public servants shall be maintained on an actuarily [sic] sound basis in accounts maintained for the purpose of providing retirement benefits. Retirement funds shall not be commingled with other government funds. Notwithstanding the foregoing, public servants holding vested rights in unfunded or partially funded retirement plans, payable from the public treasury or any public retirement account of the State of Arkansas or any of its subdivisions, shall be entitled to retain the rights vested under such plans. The General Assembly shall by general law require that all vested but less than fully funded retirement accounts for public servants be fully funded as soon as reasonably practicable, with respect to amounts which would have been required to fully fund such retirement accounts as of June 30, 2001. All retirement plans for state or local public servants hired after July 1, 2001, shall be maintained in approved privately managed retirement account(s) as may be chosen by the public servant, from any entity lawfully authorized to offer retirement plans within the State of Arkansas.
I am still uncertain as to what is to transpire under this provision. It is plain, from a reading of the last sentence, that public servants hired after July 1, 2001 will participate, if at all, in privately held retirement plans. The language of Section 5 above which precedes this last sentence must therefore refer to the retirement "accounts" of public servants employed prior to the effective date. The Section provides that: "[h]enceforth, all retirement accounts or plans for public servants shall be maintained on an actuarily [sic] sound basis in accounts maintained for the purpose of providing retirement benefits" and "[r]etirement funds shall not be commingled with other government funds." Does the language above require the liquidation of assets or investments held by all state and local public servant retirement systems, and the placing of the proceeds in individual member accounts or does this language merely require any contributions made after the effective date to be separately held? I am unable to determine the permissible scope of investment of the funds in either case.
Constitutional issues may also arise under the "obligations of contracts clause" of the United States Constitution (see art. 1, § 10 (1)) with regard to changing the terms and conditions of the retirement plans of existing state employees whether or not they are "vested." See e.g., Op. Att'y. Gen. 95-071. Similar issues may arise if the liquidation of retirement system assets is contemplated. Additional concerns may arise under this same constitutional provision with regard to the salary limitations and fringe benefit provisions of your amendment. The latter issues would arise most prominently in the case of certain public servants holding multi-year employment contracts or renewal rights.
I cannot adequately summarize the provisions of your proposed amendment without clarification of these issues.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor. See A.C.A. § 7-9-107(c). I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner should you resubmit.
Sincerely,
MARK PRYOR Attorney General
Enclosure