Dorothy Kiplinger, Chair Committee to Legalize Bingo P.O. Box 2301 Jonesboro, AR 72402
Dear Ms. Kiplinger:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 1993), of the following popular name and ballot title for a proposed amendment to the Constitution of the State of Arkansas:
 POPULAR NAME AN AMENDMENT TO ONCE AND FOR ALL TIME CLARIFY THE CONFUSION OF THE APPLICATION OF THE LOTTERY PROHIBITION TO THE GAME OF BINGO CONDUCTED BY CERTAIN CHARITABLE ORGANIZATIONS
 BALLOT TITLE AN AMENDMENT DECLARING THE GAME OF BINGO CONDUCTED BY CERTAIN CHARITABLE ORGANIZATIONS EXEMPT FORM THE LOTTERY PROHIBITION OF THE ARKANSAS CONSTITUTION; DEFINING BINGO; PROVIDING FOR THE QUALIFICATIONS OF CHURCH, VETERANS, SENIOR CITIZENS AND OTHER CHARITABLE ORGANIZATIONS; PROVIDING FOR THE REQUIREMENTS FOR PERMITS AND BECAUSE OF THE ELEEMOSYNARY PURPOSES AND INTENT OF THIS AMENDMENT PROHIBITING UNNECESSARY INTRUSIVE REGULATION AND SUPERVISION; ENCOURAGING FAIR DEALING; PROVIDING A SEVERANCE AND REPEALING CLAUSE
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject both your proposed popular name and ballot title due to certain unresolved ambiguities in the text of your proposed measure. I cannot fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of these ambiguities. I am therefore unable at this time to substitute and certify a more suitable and correct ballot title under A.C.A. § 7-9-107(b).
The proposed measure contains various ambiguities. I will give examples of some specific areas of concern; however, it must be understood that my discussion of these areas of concern is not exhaustive.
The following ambiguities must be clarified in your measure before I can perform my statutory duty:
 (1) Section I of your proposed measure exempts "church, veterans, senior citizens and other charitable organizations qualified as 501(c) or equivalent and approved by the Internal Revenue Service for a period of greater than five years . . ." from the prohibitions of Article 19, § 14 of the Arkansas Constitution. It is unclear from this language exactly what organizations will be exempt under this provision. More specifically, it is unclear what organizations would constitute" equivalents" of 501(c) organizations. In addition, it is unclear whether a church, veterans', or senior citizens' organization that is not a 501(c) (or equivalent) organization would nevertheless qualify for the exemption because they are expressly mentioned in this exemption section. Finally, it is unclear specifically what approval is referenced by the phrase "and approved by the Internal Revenue Service[.]" This phrase gives rise to a question as to whether any type of approval for any purpose by the IRS would suffice to bring an organization within the purview of this provision. Although these issues are more adequately addressed in Section II of your proposed measure, this fact does not cure the infirmity of Section I, in that the purpose of Section II is to state the requirements for receiving a permit, whereas the purpose of Section I is to state the requirements for exemption.
 (2) Section III of your proposed measure states that "all encumbrances incurred by the charities and the patrons are hereby declared to be enforceable by law." This language is very broad, thus giving rise to a question as to its scope. It is unclear what type of encumbrances are to be included in this provision, whether the provisions is intended to extend to encumbrances that are not incurred in connection with the conducting of charitable bingo games, and whether the provision creates a rebuttable presumption for evidentiary purposes.
 (3) Section IV of your proposed measure states: "To enhance the charitable intent of the amendment applicants for employment in any capacity, who are otherwise qualified shall be given preference who are or have been dependent to some extent on public assistance." The language of the provision is very broad, and it is entirely unclear who is to be bound by the provision, and who is to benefit from it.
Unless the foregoing ambiguities are resolved, I will be unable to summarize your proposed amendment effectively. I reiterate that I do not purport to have set out an exhaustive list of possible problems with the proposed measure. For this reason, I recommend that you consult with legal counsel of your choice, or with a person who is skilled in the drafting of legislation.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal. At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen,303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the issues discussed above, resubmit your proposed amendment, along with a new proposed popular name and ballot title, at your convenience. I anticipate that some changes or additions to your submitted ballot title may be necessary to reflect adequately the clarified language of the proposed amendment. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
Enclosure