Mr. Barry Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted six similar measures, four of which I rejected due to ambiguities in the text of your proposed amendments. See Op. Att'y Gen. Nos. 2001-173, 2001-110, 2001-095 and 2001-074. My office has revised and certified popular names and ballot titles for two similar measures, as evidenced by Op. Att'y Gen. Nos.2001-129 and 2001-196. You have since made additional changes to your measure and submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT TO AUTHORIZE BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS, THE OPERATION OF GAMBLING AND A STATE LOTTERY
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING THE OPERATION OF BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED OR REGISTERED TO DO BUSINESS IN THE STATE WITH NO PERSON UNDER AGE 18 PERMITTED TO PLAY BINGO OR RAFFLES; AUTHORIZING THE ADMINISTRATION OF A COLLECTIVE AUTHORITY OF SHARE HOLDERS TO BE CALLED "THE ADMINISTRATIVE CASINO AUTHORITY" TO OPERATE, HIRE AND SUBCONTRACT GAMBLING TO ANY INDEPENDENT CONTRACTOR(S) ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ANY COUNTY, CITY AND TOWN ON NOT MORE THAN 12 WATER VESSELS OF ANY SIZE TO BE ANCHORED ON ANY NAVIGABLE WATER WAY AND PUBLIC LAKE WITHIN THE STATE AND TO SELL AND SERVE COMPLIMENTARY ALCOHOLIC BEVERAGES TO BE EXTENEDED [EXTENDED] TO THOSE PERSONS HIRED AND SUBCONTRACTED TO OPERATE GAMBLING, WITHOUT LICENSE, FEE OR PERMIT BY THE STATE OR ANY SUBDIVISION THEREOF, DURING THE OPERATION OF GAMBLING ON WATER VESSELS WITHIN ANY COUNTY, CITY AND TOWN (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED) WITH NO PERSON UNDER AGE 21 PERMITTED TO GAMBLE; DEFINING GAMBLING AS THE RISKING OF MONEY ON A CHANCE BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH COMMONLY CALLED GAMBLING AND GAMING DEVICES TO INCLUDE ANY KIND OF ROULETTE WHEELS, ANY KIND OF SLOT MACHINES, GAMING TABLES OF ANY KIND FOR THE USE OF CARDS AND DICE USED IN ANY MANNER AND ANY KIND OF PARI-MUTUEL WAGERING; REQUIRING PAYMENTS TO THE STATE, COUNTY AND CITY IF APPLICABLE FROM GAMBLING NET PROFITS; DEFINING NET PROFIT AS THE AMOUNT OF MONEY EARNED FROM THE OPERATION OF GAMBLING AFTER OPERATIONAL COSTS ARE DEDUCTED FROM THE GROSS PROFIT WITH GROSS PROFIT BEING THE AMOUNT OF MONEY EARNED AS A PROFIT FROM GAMBLING OVER THE AMOUNT PAID AS GAMBLING LOSSES TO WINNERS; PROVIDING OPERATIONAL COSTS INCLUDE THE COST OF ADMINISTRATION, CONTRACTS FOR WORK AND SERVICES, SUBCONTRACTING OF THE GAMBLING OPERATION, INSURANCE, EMPLOYEE PAYROLL AND BENEFITS, UTILITIES, LEASE AND PURCHASE OF PROPERTY, INTEREST ON LOANS, ADVERTISING, PROMOTION, COMPLIMENTARY ALCOHOLIC BEVERAGES, CONSTRUCTION, MAINTENANCE AND RENOVATION OF WATER VESSELS AND FEDERAL TAXES IF APPLICABLE; REQUIRING 18% OF THE NET PROFIT FROM GAMBLING OPERATED ON ALL WATER VESSELS WITHIN THE STATE SHALL BE PAID ANNUALLY TO THE STATE'S GENERAL FUND; REQUIRING 8% OF THE NET PROFIT FROM GAMBLING OPERATED ON EACH WATER VESSEL WITHIN A COUNTY SHALL BE PAID ANNUALLY TO THAT COUNTY'S GENERAL FUND; REQUIRING 8% OF THE NET PROFIT FROM GAMBLING OPERATED ON EACH VESSEL WITHIN A CITY'S JURISDICTION SHALL BE PAID ANNUALLY TO THAT CITY'S GENERAL FUND; PROVIDING EACH SIGNATURE THE SECRETARY OF STATE COUNTS AS VALID BY A CANVASSER SHALL BE COUNTED AS 2 SHARES WITH EACH SHARE BEING 1 VOTE BY WHICH A MAJORITY SHALL HAVE ADMINISTRATIVE AUTHORITY OF THE GAMBLING OPERATION WITH BARRY LEE EMIGH RECEIVING 1 OF 2 SHARES FOR EACH SIGNATURE A CANVASSER OBTAINS WITH ALL SHARES BEING TRANSFERABLE WITHOUT THE APPROVAL OF THE GENERAL ASSEMBLY; PROVIDING THE NET PROFIT FROM GAMBLING OPERATED ON ALL WATER VESSELS WITHIN THE STATE AFTER PAYMENTS TO THE STATE, COUNTY AND CITY IF APPLICABLE ARE DEDUCTED SHALL BE PAID ANNUALLY TO THE SHARE HOLDERS BASED ON THE NUMBER OF SHARES; PROVIDING ALL LIABILITY ON THE ADMINISTRATION OF THE GAMBLING OPERATION; REQUIRING THE GAMBLING OPERATOR ANNUALLY PROVIDE THE STATE AUDITOR WITH THE COMPLETE BOOKS AND ACCOUNTS OF THE GAMBLING OPERATION AND NOTIFY THE GAMBLING OPERATOR OF ANY DEFICIT PAYMENTS; PROHIBITING ANY OTHER TAXES, FEES, LICENSES, PERMITS AND ASSESSMENTS BY THE STATE, OR ANY SUBDIVISION THEREOF, ON THE GAMBLING REVENUE AND PROPERTY USED FOR GAMBLING EXCEPT AS SPECIFIED IN THIS AMENDMENT; EMPOWERING THE GENERAL ASSEMBLY TO ESTABLISH A COMMISSION TO REGULATE BINGO AND RAFFLES, THE GAMBLING OPERATION AND TO OPERATE A STATE LOTTERY; MAKING THE PROVISIONS OF THE AMENDMENT SELF EXECUTING AND EFFECTIVE IMMEDIATELY UPON PASSAGE EXCEPT AS OTHERWISE PROVIDED IN THE AMENDMENT; MAKING THE AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title due to ambiguities in the text
of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 2 of your proposed amendment permits the "Administrative Casino Authority" to operate gambling. The precise nature of this "Authority" is unclear. Section 5 of the amendment establishes "shares" based on petition signatures, suggesting that there may be an incorporated entity. If that is the case, this should be made clear. Confusion in this regard also stems, however, from the statement in Section 5 that "a majority [of shareholders] shall have administrative authority as gambling operator to be called `The Administrative Casino Authority." See also Sections 2 and 7 defining "gambling operator" as "the administration of a collective authority of a majority of share holders to be called `The Administrative Casino Authority' . . ." Defining this entity as an "administration" is very confusing. This language suggests that the Administrative Casino Authority actually only exists or is only recognized as the collective authority of a majority of shareholders. This leads to ambiguity concerning its organization, management and operation, and whether any state laws apply in this regard. As a further consequence of this ambiguity, it is difficult to identify the actual" gambling operator." This is clearly a matter of great concern due to the gambling operator's significant powers and duties under the amendment. This must be clarified for proper reflection in the ballot title.
 2. An ambiguity also arises under Section 2 in connection with the authorization of gambling "on not more than twelve (12) water vessels. . . ." There is no reference to any time period in this regard. A question thus arises as to how the number of operating vessels will be determined for purposes of this limitation of "twelve." I believe this is an essential fact for the voter.
 3. Section 4 requires payments to the state and county from net profits, as well as to any "city" in which a water vessel is anchored. However, Section 2 of the amendment also authorizes gambling operations on water vessels that are anchored on navigable waterways and public lakes "within any . . . town of the state. . . ." While it is possible that the payment obligation to a "city" would be construed to include a "town," this is by no means clear from the amendment.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh