Mr. Barry Emigh 1720 Arrowhead Road, Apt. O North Little Rock, AR 72118
Dear Mr. Emigh:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed initiated act:
 Popular Name TAX ON CERTAIN FOOD ITEMS USED FOR PURPOSE OF SCHOLARSHIPS, TEACHER'S RETIREMENT FUND, PAYMENT TO PUBLIC EDUCATION TEACHERS AND CANVASSERS Ballot Title AN ACT TO PROVIDE FOR THE SEPARATE RECEIPT AND ACCOUNTING, BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION, OF THE STATE AND LOCAL GROSS RECEIPT SALES TAX ON FOOD ITEMS; DEFINING FOOD ITEMS AS ANY ITEM THAT IS EDIBLE TO INCLUDE DRINKABLE FOOD ITEMS AND NON-PRESCRIPTION VITAMIN SUPPLEMENTS NOT CONTAINING ALCOHOL WITH EXCEPTION NOTED BELOW; REQUIRING THE IMMEDIATE DEPOSIT OF SUCH MONEYS IN THE ARKANSAS SCHOLASTIC TRUST FUND; A FUND CREATED AS A PUBLIC TRUST SEPARATE AND APART FROM THE STATE TREASURY TO BE ADMINISTERED BY THE STATE BOARD OF FINANCE; EMPOWERING THE STATE BOARD OF FINANCE TO DISTRIBUTE THE ACCOUNT MONEY TO BE KEPT AS DISTINCT CASH FUNDS SEPARATE AND APART FROM THE STATE TREASURY; EMPOWERING THE STATE BOARD OF FINANCE TO USE FIVE PERCENT OF THE DEPOSITS FROM THE FIRST ONE HUNDRED AND EIGHTY DAYS FROM THE ARKANSAS SCHOLASTIC TRUST FUND FOR ADMINISTRATIVE COST TO DISTRIBUTE FUNDS TO CANVASSERS AND THE INITIATIVE SPONSOR; EMPOWERING THE STATE BOARD OF FINANCE TO PAY THE INITIATIVE SPONSOR OF THIS INITIATED ACT FIVE PERCENT OF THE DEPOSITS FROM THE FIRST ONE HUNDRED AND EIGHTY DAYS FROM THE ARKANSAS SCHOLASTIC TRUST FUND; PROVIDING THE DEPOSIT FROM THE FIRST ONE HUNDRED EIGHTY DAYS IN THE ARKANSAS SCHOLASTIC TRUST FUND SHALL BE DIVIDED EQUALLY BY THE NUMBER OF SIGNATURES REQUIRED BY THE SECRETARY OF STATE TO PLACE THE INITIATIVE ACT ON THE BALLOT; PROVIDING EACH CANVASSER SHALL BE PAID AN EQUAL PART FOR EACH SIGNATURE ACCEPTED BY THE SECRETARY OF STATE TO PLACE THE INITIATIVE ON THE GENERAL ELECTION BALLOT FROM THE DEPOSITS FROM THE FIRST ONE HUNDRED AND EIGHTY DAYS FROM THE ARKANSAS SCHOLASTIC TRUST FUND; PROVIDING NO PAYMENT SHALL BE MADE BY THE STATE BOARD OF FINANCE TO ANY PERSON FOR THEIR SIGNAURE ON ANY PETITION WITH THEIR SIGNATURE AS CANVASSER WITNESSED BY A NOTARY PUBLIC; REQUIRING THE STATE BOARD OF FINANCE TO MAKE SUCH AMOUNTS PAYABLE TO THOSE QUALIFIED CANVASSER'S AS PROVIDED IN THIS ACT FROM THE ARKANSAS SCHOLASTIC TRUST FUND NOT MORE THAN THIRTY WORKING DAYS AFTER THE ONE HUNDRED AND EIGHTY FIRST DAY FROM THE DATE OF PASSAGE OF THIS ACT; TO PROVIDE ANY PAYMENT BY THE STATE BOARD OF FINANCE FROM THE ARKANSAS SCHOLASTIC TRUST FUND TO THE INITIATIVE SPONSOR OF THIS ACT, CANVASSER, TEACHER, THE TEACHER'S RETIRMENT FUND AND SCHOLARSHIP PAID TO ANY PERSON SHALL BE EXEMPT FROM ANY STATE TAX; AMENDING A.C.A. § 19-4-803 TO EXEMPT THE ARKANSAS SCHOLASTIC TRUST FUND FROM THE REQUIREMENTS OF AN APPROPRIATION; EMPOWERING THE STATE BOARD OF FINANCE TO MANAGE AND INVEST THE TRUST FUND IN COMPLIANCE WITH THE PRUDENT INVESTOR RULE AND OTHER APPLICABLE STANDARDS IN A.C.A. §§ 24-3-408, -414, -415, -417 TO -425 AND A.C.A. § 19-3-518; REQUIRING SUCH INVESTMENTS AND EARNINGS TO BE KEPT AS DISTINCT CASH FUNDS SEPARATE AND APART FROM THE STATE TREASURY; EMPOWERING THE STATE BOARD OF FINANCE TO HIRE PROFESSIONALS TO ASSIST IN THE INVESTMENT OF THE TRUST FUND AND AUTHORIZING THE BOARD TO USE INVESTMENT EARNINGS FROM THE TRUST FUND TO COMPENSATE SUCH PROFESSIONALS; AUTHORIZING THE STATE BOARD OF FINANCE TO DISTRIBUTE 40% PERCENT OF THE PREVIOUS ANNUAL INVESTMENT EARNINGS FROM THE TRUST FUND FOR SCHOLARSHIPS, OF WHICH 40% SHALL BE DISTRIBUTED FOR THE FALL SEASON OF CLASSES, 40% FOR THE WINTER SESSION, AND 20% FOR THE SUMMER SESSION; AUTHORIZING THE STATE BOARD OF FINANCE TO DISTRIBUTE 8% PERCENT OF THE PREVIOUS ANNUAL INVESTMENT EARNINGS FORM THE TRUST FUND EQUALLY TO EACH TEACHER EMPLOYED FULL TIME BY A PUBLICLY FUNDED INSTITUTE OF EDUCATION; AUTHORIZING THE STATE BOARD OF FINANCE TO DISTRIBUTE 2% PERCENT OF THE PREVIOUS ANNUAL INVESTMENT EARNINGS FORM THE TRUST FUND TO THE TEACHER'S RETIRMENT TRUST FUND; THE GENERAL ASSEMBLY SHALL NOT REDUCE ANY FUNDING TO ANY PERSON, AGENCY OR INSTITUTE DUE TO MONEYS RECEIVED FROM THE ARKANSAS SCHOLASTIC TRUST FUND; REQUIRING REDEPOSIT IN THE TRUST FUND OF INVESTMENT EARNINGS NOT USED FOR SCHOLARSHIPS OR EXPENSES OF ADMINISTRATION; PROVIDING FOR APPLICATION FOR SCHOLARSHIPS TO BE SUBMITTED TO THE STATE BOARD OF FINANCE TO ANY UNIVERSITY, COLLEGE AND COMMUNITY COLLEGE WITHIN THE STATE; REQUIRING THE APPLICATION TO STATE THE FULL AMOUNT OF TUITION COST FOR THE CHOSEN UNIVERSITY, COLLEGE AND COMMUNITY COLLEGE FOR EACH SESSION OF CLASSES, THE AMOUNT OF ANY OTHER FINANCIAL AID, GRANTS OR SCHOLARSHIPS RECEIVED BY THE INDIVIDUAL'S EARNED GROSS INCOME FROM THE PREVIOUS YEAR, AND THE BALANCE OF ANY INDIVIDUAL AND JOINT BANK ACCOUNTS; SETTING THE DEALINES [SIC] FOR FILING APPLICATIONS AS NOT MORE THAN 90 WORKING DAYS, NOR LESS THAN 15 WORKING DAYS PRIOR TO: THE LAST DAY OF AUGUST FOR THE FALL SESSION OF CLASSES, THE LAST DAY OF DECEMBER FOR THE WINTER SESSION, AND THE LAST DAY OF MAY FOR THE SUMMER SESSION; REQUIRING DISTRIBUTION OF FULL-TUITION SCHOLARSHIPS TO ANY UNIVERSITY, COLLEGE OR COMMUNITY COLLEGE IN THE STATE FIRST, TO THOSE PERSONS WITH THE LOWEST TOTAL AMOUNT BY ADDING BOTH THE AMOUNT OF TUITION PAYMENT (AFTER DEDUCTIONS FOR OTHER FINANCIAL AID, GRANTS AND SCHOLARSHIPS) AND THE INDIVIDUAL'S PREVIOUS YEAR TOTAL GROSS INCOME; REQUIRING THE STATE BOARD OF FINANCE TO DEDUCT THE TOTAL AMOUNT OF THE PERSON'S INDIVIDUAL BANK ACCOUNTS OVER THE AMOUNT OF $2,500 FROM THE TUITION PAYMENT RECEIVED; REQUIRING THE STATE BOARD OF FINANCE TO DEDUCT 50% OF THE TOTAL AMOUNT OF THE PERSON'S JOINTLY HELD BANK ACCOUNTS OVER THE AMOUNT OF $5,000 FROM THE TUITION PAYMENT RECEIVED; PROHIBITING THE STATE BOARD OF FINANCE FROM MAKING ANY PAYMENTS FOR ANY PERSON TO RETAKE ANY FAILED UNIVERSITY, COLLEGE OR COMMUNITY COLLEGE CLASS; REQUIRING THE STATE BOARD OF FINANCE TO NOTIFY APPLICANTS OF THE AMOUNT OF THEIR TUITION PAYMENT AND MAKE SUCH AMOUNT PAYABLE TO THE UNIVERSITY, COLLEGE OR COMMUNITY COLLEGE NOT MORE THAN 15 WORKING DAYS AFTER THE FINAL SUBMISSION DATE OF APPLICATIONS; PROVIDING THIS ACT SHALL NOT AFFECT THE "ARKANSAS SOFT DRINK TAX ACT" OR THE STATE AND LOCAL TAXES ON ANY ITEMS HEREAFTER EXCLUDED FROM THE ARKANSAS SOFT DRINK TAX ACT TO BE DEPOSITED IN THE TRUST FUND; PROVIDING THIS ACT SHALL NOT AFFECT ANY TAX ON PREPARED RESTAURANT FOODS UNDER A.C.A. § 26-75-601 TO -618 AND A.C.A. § 26-75-701; PROVIDING THIS ACT SHALL NOT AFFECT ANY TAX ON ALCOHOLIC BEVERAGES; EXEMPTING FOOD ITEMS AS DEFINED HEREIN FROM THE STATE AND LOCAL GROSS RECEIPT SALES TAX WHEN 50% OF THE TOTAL AMOUNT OF THE INVESTMENT EARNINGS FROM THE ARKANSAS SCHOLASTIC TRUST FUND EXCEEDS THE ANNUAL DEPOSIT OF THE STATE AND LOCAL GROSS RECEIPT SALES TAX ON FOOD ITEMS; MAKING THIS ACT SEVERABLE AND REPEALING INCONSISTENT LAWS TO THE EXTENT OF THE CONFLICT; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title due to ambiguities in the text
of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. In Section One of your proposed initiated act, the phrase" with execption [sic] to those exclusions herein stated" is awkward and confusing. I assume this should read" with the exception of those exclusions herein stated."
 2. The term "ascribed" is misused in the second sentence of Section One. I assume this should read "described."
 3. Section One is further confusing in that it references" the Arkansas Scholastic Trust Fund" (the "Fund") as though it were an already existing entity, rather than one created by your proposed amendment itself. Section One should at least reference the section of your proposed act that establishes the Fund.
 4. Section Two generally may violate Ark. Const. art. 16, § 13 in that it provides for the payment of tax revenues to private individuals — namely, the canvassers for and sponsor of your proposed initiated act. To the extent this qualifies as an expenditure of public funds for a private purpose, it may constitute an illegal exaction. See Chandler v. Board of Trustees, 236 Ark. 256, 365 S.W.2d 447 (1963).
 5. The introductory sentence of Subsection Two (1) is awkward and confusing. I assume the phrase "shall be distributed" should precede, rather than follow, the phrase "from the Arkansas Scholastic Trust Fund."
 6. In Subsection Two (1)(a), the phrase "to be divided equally by the number of signatures required and accepted by the Secretary of State to place this act on the general election ballot" is confusing. You apparently assume without basis that the number of signatures" required" will be the same as the number of signatures" accepted."
 7. In Subsection Two (1)(b), the phrase "with exception as provided in this act" is needlessly vague. You should identify specifically what section of your proposed initiated act sets forth the referenced "exception."
 8. Subsection Two (1)(c), which provides that "[n]o payment shall be made by the State Board of Finance to any person for their [sic] own signature on an initiative petition to place this act on the general election ballot with their [sic] own signature as a canvasser witnessed by a notary public," is extremely confusing. This subsection appears to contain two unrelated provisions: first, that a canvasser cannot receive payment for his own signature; and, second, that a canvasser's signature will be valid only if witnessed by a notary public. Because these provisions are unrelated, they should be separately set forth. Read literally, this subsection misleadingly suggests that a canvasser will be denied payment for his own signature only if it is witnessed by a notary public.
 9. Subsection Two (2) of your proposed act is confusing and misleading in two respects. First, you fail to specify what sorts of expenditures will qualify as "administrative costs." Second, it is confusing and misleading to state that "[a]ny amount not used by the State Board of Finance for administrative costs shall be deposited in the State's General Fund." I assume you intend to say that any unspent portion of the 5% allocated for administrative costs will be deposited in the state's General Fund. However, as written, this provision can be read as dictating that the entire Fund be deposited into the General Fund.
 10. The opening sentence of Subsection Three (1) is vague and confusing in its reference to "such funds and accounts." The text of this subsection references no "funds and accounts" other than the Fund itself.
 11. Likewise, in Subsection Three (1)(a), the phrase "such funds and accounts" has no referent.
 12. Subsection Three (3) is vague and confusing in referring to "the funds and accounts created under this act." Your proposed initiated act creates only the Fund itself. This subsection is further vague in its reference to "all other duties ascribed to it herein" since administering the Fund appears to be the only duty assigned to the State Board of Finance.
 13. Subsection Three (4) of your proposed initiated act is confusing in its reference to "all other tasks that may be assigned to the State Board of Finance pursuant to this act." Your proposed act charges no entity with authority to assign any "other tasks" to the State Board of Finance and fails completely to indicate what sorts of "tasks" might be required.
 14. In Subsection Four (3) of your proposed measure, the phrase" the principal amount of the state and local gross receipt sales tax on food items" is confusing in that it suggests that any interest earned on tax receipts will not be located in the Fund. Your proposed act fails to specify any disposition of interest revenues. This subsection is further unduly vague in not identifying the nature and location in the text of the referenced "exclusions herein stated."
 15. You assume in Subsection Four (4)(a) that all eligible educational institutions conduct fall, winter and summer sessions, as opposed, for instance, to a trimester system during the standard academic year. I am uncertain that this assumption is warranted.
 16. Subsection Four (4)(a) is further confusing in setting forth the scheme for Fund distributions. This subsection begins by providing that "the State Board of Finance is hereby authorized to distribute fourty [sic] (40%) percent of the previous annual investment earnings from the Arkansas Scholastic Fund of which fourty [sic] (40%) percent of the funds shall be dispersed for the Winter session of classes, fourty [sic] (40%) percent of the funds shall be dispersed for the Fall session of classes and twenty (20%) percent of the funds shall be dispersed for the Summer session of classes. . . ." The phrase "shall be dispersed" suggests that the Board has no discretion regarding these distributions, which together total 100% of the 40% the Board would be authorized to distribute from earnings. However, your proposed act goes on to provide that the Board" is hereby authorized" to distribute another 10% of" the previous annual investment earnings" from the Fund. Subsections Four (4)(b) and (c) give no indication whether the distribution of this additional 10% is discretionary or not. If you mean that the Board is obligated annually to distribute a total of 50% of earnings, you need to say so clearly and before addressing the subcategories within this total.
 17. Subsections Four (4)(d) and (e) are confusing in that the latter is an almost verbatim repetition of the former. This presumably inadvertent repetition marks an unfortunate example of a pattern of editorial oversights inconsistent with an acceptable proposed initiated act.
 18. Subsection Four (6) of your proposed initiated act purports to prohibit the legislature from reducing future appropriations in amounts equaling expenditures from the Fund. This subsection contravenes the provisions of Ark. Const. amend. 7, which empowers the legislature to set aside any provision of an initiated act upon a 2/3 vote of the members.
 19. In Subsection Six (1)(a) of your proposed initiated act, the phrase "The tuition payment application . . . shall include the full tuition cost" is misleading. This language suggests that the applicant must actually pay the tuition at the time of applying. "Include" should read "recite." Moreover, you again misuse the word "ascribed" in the same manner as noted above. Finally, the phrase "shared part of other sources of income" is confusing. Why is income not simply income, regardless of its source?
 20. Subsection Six (2) is syntactically jumbled and, if read literally, suggests that the application, rather than the student, may receive a scholarship.
 21. The formula set forth in Subsection Six (4) is too opaque to be readily understandable. It needs to be rewritten in short, concise sentences. I gather you propose ranking each applicant in order of preference to receive a scholarship based on the sum of his tuition minus itemized deductions plus earned gross income. This can be far more simply stated than you have done.
 22. In Subsections Six (6) and (7), you need to delete the closing" by the State Board of Finance" since this could only modify the verb "received" in your text. This is not what the surrounding text suggests you mean.
 23. Subsections Seven (1) and (2) are confusing in that they appear to be merely duplicative of each other. I cannot determine why both sections are included. The subsections are further confusing in that you fail to indicate how your proposed initiated act might "affect" the Arkansas Soft Drink Tax Act but for the operation of Section Seven. Section Seven should further recite the Code sections that comprise the Arkansas Soft Drink Tax Act. Finally, Subsection Seven (3) is misleading in referring to "items hereafter excluded from the `Arkansas Soft Drink Tax Act.'" The context suggests that the word "from" in this passage should be replaced with "under."
 24. Section Eight of your proposed initiated act is misleading and confusing in that the referenced statutes neither authorize nor define restaurants or similar businesses, as the text of this section wrongly declares.
 25. Section Ten of your proposed initiated act is confusing because the term "thereafter" has no referent. This section is further highly confusing in that it fails sufficiently to elaborate its terms or to establish any enforcement mechanism. If I understand this section, if ½ of the previous annual income on Fund investments exceeds the current annual amount of state and local gross receipts sales tax collected on food items, no further gross receipts sales tax on such items shall be levied. I assume you settled on this formula based on the conclusion that if the amount of annual Fund investment earnings redeposited as principal exceeds the annual addition to principal through taxation, the Fund will have reached a critical mass that makes further taxation unnecessary. However, you say nothing about who will make this determination and how the termination of taxing will be implemented. You further fail to indicate whether the suspension of taxation is permanent or whether it somehow turns on the performance of Fund investments in future years.
I appreciate that this itemized list of criticisms may strike you as exhaustive and that it contains criticisms of passages contained in the initiated act whose popular name and ballot title I approved in Ark. Op. Att'y Gen. No. 2000-163. However, having concluded that I must reject your petition in the present case, I have taken the opportunity to address problems of draftsmanship that in and of themselves were not sufficiently egregious to dictate a rejection of your petition in my earlier opinion. I offer these criticisms solely to afford you the chance to remedy variably significant but, in isolation, non-fatal textual problems in the event you elect to resubmit your petition.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[i]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed initiated act, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
I feel obligated to close with an admonishment. As you know, various sections of your proposed initiated act track almost verbatim the sections of a proposed constitutional amendment whose text I rejected in Ark. Op. Att'y Gen. No. 2000-186. Unfortunately, you submitted your proposed initiated act before I even had the opportunity to respond to your proposed constitutional amendment, which you apparently decided to abandon without formally withdrawing your petition. As a result, this office has been burdened with advising you twice regarding textual problems you might have resolved if you had waited for our first opinion before submitting a second petition. Please refrain in the future from submitting revised proposed measures before you have had the benefit of our commentary on the original. Finally, I strongly encourage you to confer with someone experienced in the drafting of legislation and/or the editing of legal documents before resubmitting your proposed initiated act. Both of your submissions have been characterized by grammatical deficiencies of syntax and spelling that an experienced proofreader should help you correct.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh