Mr. Henry Richards 206 Highway 285 Greenbrier, AR 72058
Dear Mr. Richards:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed constitutional amendment:
POPULAR NAME
AN AMENDMENT TO ESTABLISHMENT OF A STATE LOTTERY ONLY
BALLOT TITLE
AN AMENDMENT TO THE ARKANSAS CONSTITUTION ESTABLISHING A STATE LOTTERY TO BE OPERATED BY THE ARKANSAS STATE LOTTERY COMMISSION. THE LOTTERY COMMISSION PROVIDES TICKETS TO RETAIL STORES FOR SALE TO CITIZENS OVER 18 YEARS OF AGE. THE LOTTERY COMMISSION, WOULD PROHIBIT SALES TO MINORS. NO LOTTERY TICKET SALES WOULD GO TO ANY PURCHASER OPERATED SYSTEMS. THE TOTAL ANNUAL REVENUE GENERATED FROM THE SALE OF LOTTERY TICKETS SHALL BE ALLOCATED BY THE ARKANSAS STATE LOTTERY COMMISSION. THE COMMISSION WOULD ALLOCATE FUNDS AS FOLLOWS: 50% FOR PRIZES TO LOTTERY PLAYERS, 38% WOULD BE APPROPRIATED BY THE GENERAL ASSEMBLY IN AMOUNTS PRESCRIBED IN THE AMENDMENT FOR THE GENERAL OPERATION OF STATE GOVERNMENT, STATE HIGHWAYS, ALL GRADES OF EDUCATION, LAW ENFORCEMENT AND CRIME PREVENTION. THE COMMISSION WOULD ALLOW 7% OF REVENUE AS COST FOR RUNNING THE STATE LOTTERY; 5% WOULD GO TO RETAILERS WHO SELL LOTTERY TICKETS AS A COMMISSION ON EACH LOTTERY TICKET SOLD. THE AMENDMENT, IF PASSED, WOULD REQUIRE THE GENERAL ASSEMBLY TO ENACT SUCH LEGISLATION AND MAKE SUCH APPROPRIATIONS AS SHALL BE NECESSARY TO START LOTTERY, PURCHASE LOTTERY MACHINES, LOTTERY TICKETS AND GETTING LOTTERY UP AND RUNNING.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's Political Caucus v. Riviere, 282 Ark. 463, 466,677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant,259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall, 229 Ark. 411,316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere, 270 Ark. 219,223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen, 318 Ark. 241,884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title due to ambiguities in both the ballot title and the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
With regard to the specific ambiguities, it must be initially noted that there are several substantive provisions in the ballot title that do not appear in the text of your proposed amendment. As indicated above, the ballot title should be a fair and concise summary of the text of your measure. It should not, however, vary substantively from the text. The text of your amendment is rendered ambiguous, in my view, by some of the ballot title language; and this disconnect between the proposed ballot title and the text prevents me from substituting ballot title language.
Specifically, your proposed ballot title varies from the text of your proposed amendment in the following respects:
1. The ballot title states that the amendment establishes a state lottery "to be operated by the Arkansas State Lottery Commission." However, the text of the amendment makes no actual reference to the Commission operating the lottery. It states simply that the Commission will impose fines on retailers and that it will allocate revenues as provided. Indeed, one possible interpretation is that the General Assembly, through the enactment of legislation "to organize and maintain" the lottery (Section 4), might have authority regarding operations. This should be clarified for proper inclusion in the ballot title.
2. The ballot title states that the Lottery Commission "provides tickets to retail stores for sale. . . ." This is not clear from the language of the amendment. The amendment contemplates lottery ticket sales by "retailers," but the term "retailers" is not defined. And the amendment states that the General Assembly "shall purchase . . . lottery tickets" (Section 4). There is no mention of the Commission providing tickets "to retail stores for sale" as stated in the ballot title. Additionally, the amendment provides for "5% revenues for retailers[.]" (Section 5). But again, "retailers" are not defined. You may wish to consider addressing the procedure regarding ticket sales, specifically whether this is subject to regulation by the General Assembly or the Commission. You may also wish to consider defining the term "retailers."
3. The ballot title states that "[n]o lottery ticket sales would go to any purchaser operated systems." This statement does not appear in the amendment.
4. The ballot title refers to "[t]he total annual revenue" generated from ticket sales. There is no reference to annual revenue in the amendment.
5. With regard to the allocation of funds, according to the ballot title, 38% would be appropriated by the General Assembly "in amounts prescribed in the amendment. . . ." However, the corresponding provision in the amendment (Section 5) only mentions the 38%. There are no prescribed amounts under this category. Additionally in this regard, the ballot title's language regarding "State highways, all grades of education, law enforcement and crime prevention" departs substantially from the text of Section 5 of the amendment.
In addition to the above inconsistencies between your proposed ballot title and amendment, I must point out the following ambiguities arising from the amendment's text:
1. Section 1 of the amendment, regarding the Lottery Commission, does not address such matters as the exact procedure for selecting Commission members, terms of Commissioners, or filling of vacancies. If you intend for the General Assembly to fill in these details through its power and duty to "organize and maintain" the Lottery (Section 4), this may need to be clarified. Otherwise, uncertainty may result, giving rise to a potential basis for a ballot title challenge.
2. Section 3 of the Amendment states that the Commission "will allocate all funds equally into the four (4) Congressional Districts." I am uncertain how to interpret this language, given the provisions of Section 5 regarding percentage allocations, particularly the 38% "for amounts needed by the General Assembly." The proposed ballot title language with respect to this 38% is also ambiguous, as noted above (#5). If the mandate on the Commission to allocate the funds equally is intended to give the Commission oversight with regard to the percentage allocations set out in Section 5, this should be clearly stated for proper reflection in the ballot title.
3. Several other ambiguities arise under Section 5 involving revenue allocation. With regard to the 7% "cost for running the lottery," it is unclear where this 7% is to be remitted. As noted above, there is no clear statement in the text regarding operation of the Lottery. Although the proposed ballot title states that the Lottery is to be operated by the Commission, in my view this is not clear from the text and could lead to uncertainty as to the 7% allocation under Section 5. It is also unclear whether the 7% for lottery "cost" includes the purchases addressed in Section 4, i.e., cost to General Assembly for purchase of lottery machines and tickets. According to Section 4, this is to be repaid from ticket proceeds. But does the repayment come from the 7%?
4. The language requiring 38% "for amounts needed by the General Assembly[,]" also requires interpretation because it is unclear whether the 38% is to be turned over to the General Assembly for appropriation in its discretion., or whether some particular breakdown or allocation might be required of the General Assembly in this regard.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34
(1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and instruct you to "redesign" the proposed measure and ballot title. See A.C.A. § 7-9-107(c). I must reiterate in this regard that if the text of your proposed constitutional amendment is unclear or uncertainties remain, the standard set by the Arkansas Supreme Court for this serious undertaking will not be met. That is why I have previously suggested (see Op. Att'y Gen. 2003-127), and I again suggest, that it would be advisable for you to seek the guidance of private counsel or experts in this process to ensure that there are no ambiguities or problems of implementation.
You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh