Oscar Stilley Attorney at Law 5111 Rogers Avenue, Suite 520 Fort Smith, AR 72003-2041
Dear Mr. Stilley:
You have requested certification, pursuant to A.C.A. § 7-9-107, of the following popular name and ballot title for a proposed constitutional amendment. You have previously submitted similar measures for certification by the Attorney General. My predecessor certified two such submissions, see Ops. Att'y Gen. Nos. 2002-015 and 2000-021, and rejected three, see Ops. Att'y Gen. Nos. 1999-413, 99-262 and 99-199. You have since made changes to your measure and have submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name ARKANSAS PRISON SYSTEM AMENDMENT Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION PROVIDING THAT INMATES, DEFINED AS PERSONS COMMITTED TO THE CUSTODY OF THE ARKANSAS DEPARTMENT OF CORRECTION ("ADC"), SHALL NOT BE ENTITLED TO PAROLE OR GOOD TIME UNLESS THEY PAY THE FULL COST OF THEIR INCARCERATION BY PRODUCTIVE LABOR; CREATING THE POSITION OF COMMISSIONER OF CORRECTION ("COMMISSIONER") FOR THE OPERATION AND MANAGEMENT OF THE ADC, TO BE FILLED BY NON-PARTISAN ELECTION AS SOON AS REASONABLY POSSIBLE AFTER PASSAGE OF THE AMENDMENT, AND AT EACH REGULARLY SCHEDULED STATEWIDE ELECTION THEREAFTER; PROVIDING THAT THE SOLE COMPENSATION OF SUCH COMMISSIONER SHALL BE 3% OF THE NET REDUCTION OF THE COSTS OF THE ADC BELOW COSTS IN THE PREVIOUS FISCAL YEAR, PLUS 3/10TH OF 1% OF THE REDUCTION OF THE COST OF THE OPERATION OF THE ADC, FROM THE EXPENDITURES MADE IN FISCAL YEAR 2003, PLUS 10% OF ANY NET PROFITS OF THE ADC; GRANTING THE COMMISSIONER MAXIMUM FLEXIBILITY IN THE OPERATION AND STAFFING OF ARKANSAS PRISONS; ABOLISHING THE BOARD OF CORRECTION AND COMMUNITY PUNISHMENT, AND AUTHORIZING THE COMMISSIONER TO EMPLOY SUITABLE PERSONS TO PASS UPON APPLICATIONS FOR PAROLE, AND PERFORM ALL OTHER DUTIES NOW PERFORMED BY THE BOARD OF CORRECTION AND COMMUNITY PUNISHMENT; ABOLISHING ALL LIMITATIONS ON PAROLE OR GOOD TIME FOR SPECIFIC CLASSES OF PRISONERS, EXCEPT PERSONS SERVING SENTENCES FOR VIOLENT FELONIES; AUTHORIZING THE COMMISSIONER TO CONTRACT FOR THE HOUSING OF INMATES FROM OTHER STATES, WHERE SUCH CONTRACTS ARE ECONOMICALLY ADVANTAGEOUS TO ARKANSAS TAXPAYERS; AUTHORIZING THE EMPLOYMENT OF INMATES AT PRODUCTIVE LABOR BY THE ADC, AN EXISTING STATE AGENCY, OR THE ARKANSAS CORRECTION CORPORATION, (HEREINAFTER "ACC") AN EXISTING PRIVATE FOR PROFIT CORPORATION CHARTERED APRIL 15, 1999, AND ORGANIZED FOR THE PURPOSE OF EMPLOYING INMATES; AUTHORIZING THE EMPLOYMENT OF INMATES BY OTHER SUITABLY BONDED ENTITIES IF ACC FAILS TO REDUCE THE COST OF ADC, TO ARKANSAS TAXPAYERS, TO NOT MORE THAN $50,000,000 ANNUALLY, FOR ANY FISCAL YEAR ENDING AFTER JULY 1, 2008; PROVIDING THAT THE COMMISSIONER SHALL BE AUTHORIZED TO CONTRACT WITH ACC OR OTHER AUTHORIZED ENTITIES FOR THE HOUSING, CUSTODY, AND EMPLOYMENT OF INMATES DETERMINED BY THE COMMISSIONER TO BE QUALIFIED FOR PRODUCTIVE EMPLOYMENT, WHETHER ON OR OFF PRISON PROPERTY; PROVIDING THAT THE COMMISSIONER IS AUTHORIZED TO PROMULGATE ALL REGULATIONS OF ACC, OR ANY OTHER ENTITY ENTRUSTED WITH INMATES, AS TO THE LOCATION AND TYPE OF HOUSING TO BE USED FOR INMATES, WHETHER ON OR OFF PRISON PROPERTY, OR OTHERWISE DEEMED NECESSARY TO REDUCE THE RISK OF ESCAPE, AND REGULATIONS WITH RESPECT TO THE GRANTING OF GOOD TIME AND PAROLE; PROVIDING THAT THE COMMISSIONER MAY PRESCRIBE FORMS FOR THE CONTRACTS MADE BETWEEN ACC OR OTHER AUTHORIZED ENTITIES, AND INMATES; PROVIDING THAT THE ADC MAY NOT DEMAND OR RECEIVE COMPENSATION FOR THE PLACEMENT OF INMATES WITH ACC OR OTHER AUTHORIZED ENTITY, OTHER THAN THE SECURE HOUSING AND NECESSARY CARE OF THE INMATE, EXCEPT WHERE THE INMATES ARE USED FOR HIGHWAY CONSTRUCTION; PROVIDING THAT INMATES ENTRUSTED TO ACC OR OTHER AUTHORIZED ENTITY MAY BE EMPLOYED AT ANY SUITABLE EMPLOYMENT EXCEPT OPERATING PUBLIC RETAIL ESTABLISHMENTS, SCHOOLS, DAY CARE FACILITIES, HOSPITALS, OR SIMILAR FACILITIES IN WHICH THE PUBLIC'S INTEREST IN SAFETY AND SECURITY CANNOT BE REASONABLY PROTECTED; PROVIDING THAT INMATES ENTRUSTED TO ACC OR OTHER AUTHORIZED ENTITY MAY NOT MINGLE WITH THE GENERAL PUBLIC UNSUPERVISED; PROVIDING THAT SUFFICIENTLY PRODUCTIVE INMATES MAY BE PROVIDED WITH READJUSTMENT ACCOUNTS, FROM WHICH THE EXPENSES FOR THE HEALTH, EDUCATION, AND WELFARE OF THE PRISONER MAY BE PAID, THE REMAINDER OF WHICH SHALL BE USED FOR THE BENEFIT OF THE PRISONER UPON RELEASE, IN HIS OR HER TRANSITION TO FREE SOCIETY; PROVIDING THAT THE SOLE COMPENSATION OF ACC OR OTHER SUCH AUTHORIZED ENTITY SHALL BE THE PROFITS FROM LABOR OF INMATES ENTRUSTED TO THE CARE OF SAID ENTITY; PROVIDING THAT ACC, AND ANY OTHER ENTITY ENTRUSTED WITH THE CUSTODY OF INMATES FOR PURPOSES OF EMPLOYMENT, SHALL MAINTAIN ADEQUATE PHYSICAL SECURITY TO PREVENT ESCAPES OR INJURY TO PRIVATE PERSONS OR PROPERTY; PROVIDING FURTHER THAT ALL SUCH ENTITIES SHALL POST BOND AND BE LIABLE FOR INTENTIONAL OR NEGLIGENT DAMAGES CAUSED BY INMATES IN THEIR CUSTODY, NOT TO EXCEED $100,000 PER PERSON PER INCIDENT, UNTIL JANUARY 1, 2007, AT WHICH TIME THE MAXIMUM LIABILITY PER PERSON PER INCIDENT SHALL INCREASE TO $1,000,000; PROVIDING THAT INMATES HELD FOR VIOLENT FELONIES SHALL NOT BE ELIGIBLE FOR EMPLOYMENT OUTSIDE PRISON BOUNDARIES UNLESS AND UNTIL THE COMMISSIONER DETERMINES THAT THE PRISONER HAS MADE SUBSTANTIAL CHANGES THAT MATERIALLY REDUCE THE RISK OF FURTHER VIOLENCE AGAINST PERSONS OR PRIVATE PROPERTY; EXCLUDING INMATES HELD UNDER SENTENCES OF LIFE WITHOUT PAROLE OR DEATH SENTENCES FROM ELIGIBILITY FOR EMPLOYMENT OFF PRISON PROPERTY UNDER ANY CIRCUMSTANCES; PROVIDING THAT ALL SAVINGS OF TAX MONIES FROM THE REDUCTION OF COSTS OF PRISON OPERATIONS SHALL BE USED FOR ROADS AND HIGHWAYS; PROVIDING THAT INMATES MAY BE USED DIRECTLY IN HIGHWAY CONSTRUCTION, AND THAT THE DEPARTMENT OF CORRECTION SHALL RECEIVE CREDIT FOR THE VALUE OF SUCH CONSTRUCTION IN THE CALCULATION OF ITS PROFITS AND LOSSES; PROVIDING THAT THE STATE OF ARKANSAS SHALL NOT MAKE OR ENFORCE ANY LAW CONCERNING PRISON OPERATIONS, IF SAID LAW INCREASES THE COSTS OF THE ADC OR LIMITS OPPORTUNITIES TO ENHANCE THE REVENUE OF THE SYSTEM, UNLESS THE PROPONENT OF SAID STATE LAW PROVES THAT THE LAW OR REGULATION IS REASONABLY NECESSARY AND EFFECTIVE TO PROTECT A SUBSTANTIAL STATE INTEREST, AND THE OPPONENT OF SAID LAW OR REGULATION FAILS TO PROVE THAT AN ALTERNATIVE LESS COSTLY TO THE CITIZENRY WOULD REASONABLY PROTECT THE STATE'S INTEREST; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING PROVISIONS; PROVIDING THAT THE AMENDMENT IS SELF-EXECUTING AND SHALL TAKE EFFECT JANUARY 1, 2005, EXCEPT AS OTHERWISE PROVIDED; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, I conclude that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot at this time fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. §7-9-107(b).
I refer to the following ambiguities:
 • Section 2 of your proposed measure provides that inmates in Arkansas prisons shall not be entitled to earn good time toward release or eligibility toward parole, "unless the prisoner by productive labor pays the full costs of his or her incarceration." The measure does not indicate the point at which or the manner by which a determination can be made that any given prisoner has, by productive labor, paid the full costs of his or her incarceration, nor does the measure define the term "productive labor." This deficiency in the measure leaves open the question of whether the determination is to be made on a daily, monthly, or yearly basis, and when the prisoner can be deemed to be entitled to begin earning good time. In addition, the measure does not indicate whether this is a matter within the discretion of the "Commissioner of Correction," or whether the General Assembly can address the issue. Although a later section does appear to authorize the Commissioner to make rules and regulations concerning the terms and conditions for the granting of good time credits and parole eligibility, see Section 3(b)(2), the provision concludes with the phrase "as set forth in Section 5 herein." This reference is puzzling, because Section 5 of the proposed measure does not address this issue.
 • Section 3 of the proposed measure creates the position of "Commissioner of Correction," to be elected "in non-partisan elections at a special election as soon as reasonably possible after the passage of the Amendment[.]" This provision is vague in that it does not specify such crucial matters as who is to call the election, the qualifications for holding the position, and the process for filing to run for the position.
 • Section 3(a) of the proposed measure, in addressing the compensation of the "Commissioner of Correction," makes reference to the "net profit" of the Department of Correction for purposes of calculating that compensation. The measure defines the term "net profit" as follows: "`Net profits' means any profits from Arkansas Department of Correction industries and operations, where no payments received from the Arkansas State Treasury, except payments made for goods sold or services rendered, are retained for prison operations or compensation of the Commissioner of Corrections." This definition is vague in several respects. First, it refers to the Department of Correction's" profit" in order to define the Department's "net profit." This reference is particularly vague in light of the fact that the Arkansas Department of Correction, as currently structured, is not a for-profit entity, and the proposed measure does not purport to change this aspect of the Department. Moreover, it is unclear whether the final phrase of the definition, referring to payments that are not retained, means that no payments actually are retained, or that the calculation should simply be made by excluding such payments. In addition, it is unclear who is to perform the calculation, and whether a conflict of interest would be created if the Commissioner himself is required to perform it.
 • Section 3(b) of the proposed measure provides that the Commissioner of Correction shall have "full authority as to the employment or discharge of all employees of the Department of Correction, their compensation, and benefits." This aspect of the proposed measure will clearly impact certain portions of current law (including other constitutional provisions) that govern state employees' benefits. The measure and the ballot title should notify the voters of this fact. In addition, it is unclear from this provision whether the intent is to obviate any need for legislative appropriations for Department of Correction salaries.
 • Section 3(b)(2) authorizes the Commissioner of Correction to contract with the "Arkansas Correction Corporation" concerning the productive employment of designated inmates. However, this section also makes reference to "any other entity authorized herein to be entrusted with inmates." This reference is problematic, first, because no other entities are specifically authorized in the provision to be entrusted with inmates. Moreover, because of the specific authorization of the Commissioner to contract with the Arkansas Correction Corporation, this reference to other entities makes unclear the issue of the scope of the Commissioner's authority to contract.
 • Section 3(b)(2) also authorizes the Commissioner to prescribe "forms upon which contracts between ACC and prisoners are made for purposes of employment of prisoners." It is unclear whether the Commissioner is authorized to dictate the terms of such contracts. It is also unclear what the relationship (contractual or otherwise) will be between the prisoners and third parties for whom labor is performed. Moreover, it is unclear whether the proposed measure envisions that prisoners will have recourse against any party for contractual violations.
 • Section 3(b)(3) authorizes the Commissioner to contract for the housing of inmates from other states, "where such contracts reduce the costs to the taxpayers of the State of Arkansas or enhance the profits of the Arkansas Department of Correction." The measure does not explain what is meant by "reduce the costs to the taxpayers," or "enhance the profits of the Arkansas Department of Correction." It is unclear what would constitute a reduction in costs for purposes of this section. Moreover, the reference to profits, as discussed previously, is vague in light of the fact that the Department of Correction is not a for-profit entity.
 • Section 3(b)(4) abolishes the Board of Correction and Community Punishment. It is unclear what effect this provision is intended to have upon existing rules and regulations of the abolished board. Although the provision states that "[a]ll limitations on parole or good time for specific classes of prisoners or offenses are abolished," it is unclear how rules and regulations concerning parole and good time, other than those that impose limitations, will be impacted. Moreover, both Section 3 and Section 2 raise the question of what impact the measure is intended to have upon any good time that has been accrued by inmates at the time of the passage of the measure. It is also unclear what impact the proposed measure is intended to have upon any other agencies having responsibilities related to parole, but that are not mentioned in the measure, such as the existing Post Prison Transfer Board. In addition, Section 3(b)(4) excepts from its abolition of limitations on parole and good time "those for sentences for violent felonies." It is unclear which limitations this provision refers to, nor does the provision specify what is meant by "violent felonies" or who is to determine what constitutes a "violent felony."
 • It is unclear what Section 4(b) means — particularly the last sentence of the section.
 • Section 4(d) provides that ACC or other employing entities are to pay into an "individual readjustment account" for prisoners "[w]here the productive labor of a prisoner is sufficient to warrant same[.]" The measure does not explain what this phrase means — i.e., what type of "productive labor" would be sufficient to warrant payment into the account. The measure appears to make such payment discretionary with the employing entity, but does not explain how such payments are to affect the calculation of whether the inmate has paid the costs of incarceration.
 • Section 8 of the proposed measure prohibits the state from making or enforcing any law concerning prison operations" if said law increases the costs of the Arkansas Department of Correction or limits opportunities to enhance the revenue of the system, unless the proponent of said state law proves that the law or regulation is reasonably necessary and effective to protect a substantial state interest, and the opponent of said law or regulation fails to prove that an alternative less costly to the citizenry would reasonably protect the State's interest," This language is broad and vague. Terms such as "costs," "enhance," "proponent," and "opponent" would require definition before this provision could be applied. Moreover, it is unclear how the required" proof" would be established under this provision.
 • Section 9 of the proposed measure grants the General Assembly the authority to "in its discretion enact such laws as it may deem proper for the orderly implementation" of the amendment. This grant of authority appears to be contrary to both Section 3(b)(1), which seems to give the Commissioner the final authority for the implementation of the amendment, and to the limitation language of Section 8, discussed previously.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
The Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v.Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the language of a proposed measure and its effects on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience.
I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB/cyh