Mr. Charles L. Ormond The Insurance Place 101 South Moose Street Post Office Box 29 Morrilton, AR 72110
Dear Mr. Ormond:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. You have previously submitted various similar measures, some of which my predecessor rejected due to ambiguities in the text of your proposed amendments. See Ops. Att'y Gen. Nos. 2005-190, 2005-168, 2005-128 and 2005-089. My predecessor revised and certified popular names and ballot titles for two similar measures, as evidenced by Ops. Att'y Gen. Nos. 2005-239 and 2005-219. You have made changes in the text of your proposal since your last submission, mainly to update the dates referred to in your last certified submission, and have now submitted the following proposed popular name and ballot title for my certification:
 Popular Name THE ARKANSAS COMMISSION ON LOTTERIES AND WAGERING AMENDMENT Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION CREATING THE ARKANSAS COMMISSION ON LOTTERIES AND WAGERING AND INVESTING IT WITH POWER TO LICENSE AND REGULATE CHARITABLE BINGO, CONDUCT *Page 2 
AND REGULATE WAGERING GAMES, AND REQUIRING IT TO OPERATE AND REGULATE ONE OR MORE STATEWIDE LOTTERY GAMES; DEPRIVING THE GENERAL ASSEMBLY OF ANY POWER TO REGULATE OR REVIEW THE COMMISSION; RENDERING INAPPLICABLE TO THE COMMISSION ANY STATE LAW REGULATING A STATE AGENCY; PROVIDING FOR THE APPOINTMENT BY THE GOVERNOR OF FOUR (4) INITIAL COMMISSIONERS, ONE FROM EACH CONGRESSIONAL DISTRICT, AND THE APPOINTMENT OF ONE ADDITIONAL INITIAL COMMISSIONER, WHO SHALL BE MR. CHARLES ORMOND OF MORRILTON, ARKANSAS, WHO SHALL SERVE AS DIRECTOR; AUTHORIZING THE GOVERNOR TO ARRANGE STAGGERED TERMS OF TWO, FOUR, SIX AND EIGHT YEARS FROM THE FOUR INITIAL COMMISSIONERS AND SETTING THE TERM OF MR. CHARLES ORMOND FROM JANUARY 1 OF THE YEAR FOLLOWING ADOPTION AND ENACTMENT FOR A TERM OF TEN (10) YEARS; PROVIDING, UPON THE EXPIRATION OF THE INITIAL COMMISSIONERS' TERMS, FOR THE STAGGERED POPULAR, NONPARTISAN, PLURALITY ELECTION OF FOUR FUTURE COMMISSIONERS ONE FROM EACH CONGRESSIONAL DISTRICT FOR ONE EIGHT YEAR TERM EACH, AND THE APPOINTMENT, BY THE FOUR ELECTED COMMISSIONERS, OF A FIFTH COMMISSIONER TO SERVE AS DIRECTOR; AUTHORIZING THE DIRECTOR TO VOTE IN CASE OF A TIE AND LIMITING HIS SERVICE TO NO MORE THAN TEN YEARS; SETTING THE QUALIFICATIONS OF COMMISSIONERS AND PROVIDING FOR THE FILLING OF TEMPORARY VACANCIES BY THE REMAINING COMMISSION MEMBERS; AUTHORIZING THE COMMISSIONERS TO SET THEIR OWN REASONABLE SALARIES AND THE SALARY OF THE DIRECTOR AND OTHER EMPLOYEES; AUTHORIZING THE COMMISSION TO LICENSE AND REGULATE CHARITABLE BINGO BY CERTAIN NONPROFIT ENTITIES WITH NET RECEIPTS USED ONLY FOR CHARITABLE, RELIGIOUS AND *Page 3 
PHILANTHROPIC PURPOSES AND REQUIRING IT TO OPERATE AND REGULATE ONE OR MORE STATEWIDE LOTTERY GAMES, AS DEFINED, THROUGH CONTRACTUALLY-AUTHORIZED LOTTERY GAME RETAILERS; AUTHORIZING THE COMMISSION TO CONDUCT AND REGULATE WAGERING GAMES, AS DEFINED, IN FACILITIES OWNED BY THE COMMISSION AND OPERATED BY THE COMMISSION OR THROUGH CONTRACTS WITH ONE OR MORE PERSONS; AUTHORIZING LODGING, RECREATIONAL AND ENTERTAINMENT FACILITIES IN CONJUNCTION WITH WAGERING FACILITIES AND AUTHORIZING THE SERVING OF ALCOHOLIC BEVERAGES AT ANY TIME IN WAGERING FACILITIES; REQUIRING THE COMMISSION TO COMPLY WITH ALCOHOLIC BEVERAGE LAWS NOT IN CONFLICT WITH THE AMENDMENT; RESTRICTING THE CONDUCTING OF WAGERING GAMES TO COUNTIES WHERE THE VOTERS HAVE APPROVED SUCH GAMES, EXCEPT THAT THE COMMISSION MAY AGREE TO LICENSE ANY THOROUGHBRED OR GREYHOUND RACING TRACK OWNER TO CONDUCT WAGERING GAMES WITHOUT LOCAL VOTER APPROVAL; AUTHORIZING SIMULCASTING OF RACES HELD AT THE TRACKS AT WAGERING FACILITIES OF THE COMMISSION OR ITS CONTRACTORS; DENYING THE COMMISSION THE AUTHORITY TO REGULATE PARIMUTUEL WAGERING AT THE TRACKS; PROVIDING THAT DISAPPROVAL OF WAGERING GAMES BY COUNTY VOTERS WILL NOT AFFECT PARIMUTUEL WAGERING BY HORSE RACING OR GREYHOUND TRACKS OR WAGERING AUTHORIZED BY OTHER LAW; REQUIRING THE COMMISSION TO ESTABLISH "WAGERING DISTRICTS" WHEN ONE OR MORE COUNTIES APPROVE WAGERING GAMES; PROVIDING FOR THE APPOINTMENT, BY THE COMMISSION, OF "WAGERING DISTRICT ADVISORY COMMITTEES" FOR EACH WAGERING DISTRICT; AUTHORIZING THE COMMISSION TO: 1) BORROW MONEY AND ISSUE NEGOTIABLE EVIDENCES OF *Page 4 
DEBT, BUT PROVIDING THAT THE STATE, COMMISSIONERS AND ITS EMPLOYEES SHALL NOT BE LIABLE FOR SUCH DEBTS; 2) PLEDGE ITS REVENUES AND MORTGAGE ITS PROPERTY; 3) ACQUIRE PROPERTY BY EMINENT DOMAIN IN THE SAME MANNER AS EXERCISED BY THE GAME AND FISH COMMISSION; AND 4) RECEIVE FUNDS APPROPRIATED BY LAW; REQUIRING INCOME RECEIVED FROM LICENSURE OF CHARITABLE BINGO TO BE USED SOLELY FOR ADMINISTRATION OF THAT PROGRAM; REQUIRING RETNETION OF NET LOTTERY PROCEEDS BY THE COMMISSION TO SUPPORT ITS FUNCTIONS; REQUIRING THE DISTRIBUTION OF NET WAGERING PROCEEDS IN A WAGERING DISTRICT AS FOLLOWS: 1) FOURTEEN PERCENT (14%) TO THE COUNTIES, MUNICIPALITIES AND SCHOOL DISTRICTS IN THE WAGERING DISTRICT AS DETERMINED BY THE COMMISSION AFTER CONSIDERING THE PROPORTION OF REAL PROPERTY TAXES DISTRIBUTED BY EACH COUNTY TO THE TAXING ENTITIES DURING THE PREVIOUS CALENDAR YEAR; 2) SIX PERCENT (6%) FOR REBATES TO REAL PROPERTY OWNERS OF REAL PROPERTY TAXES PAID IN THE DISTRICT AS DETERMINED BY THE COMMISSION; 3) TEN PERCENT (10%) TO A TRUST FUND TO REIMBURSE RESIDENTS OF THE DISTRICT FOR A PORTION OF THEIR HEALTH INSURANCE PREMIUMS AS DETERMINED BY THE COMMISSION; AND 4) SEVENTY PERCENT (70%) RETAINED BY THE COMMISSION FOR OPERATIONS; AUTHORIZING THE GENERAL ASSEMBLY TO INCREASE THE PERCENTAGES DISTRIBUTED TO TAXING UNITS AND FOR TAX REBATES AND TO THEREBY REDUCE THE AMOUNT RETAINED BY THE COMMISSION; AUTHORIZING THE COMMISSION TO REMIT SURPLUS FUNDS TO THE STATE APPORTIONMENT FUND IN THE STATE TREASURY; PROVIDING THAT COMMISSION EXPENDITURES SHALL NOT BE SUBJECT TO APPROPRIATION BY THE GENERAL ASSEMBLY; LEGALIZING SHIPMENTS OF GAMBLING DEVICES INTO *Page 5 
ARKANSAS FOR PURPOSES OF FEDERAL LAW; DENYING THE GENERAL ASSEMBLY POLITICAL SUBDIVISIONS REGULATORY AUTHORITY OVER THE COMMISSION OR ITS ACTIVITIES EXCEPT AS OTHERWISE STATED; AMENDING ARKANSAS CONSTITUTION ART. 19, SECTION 14 TO OBVIATE THE EXISTING PROHIBITION AGAINST LOTTERIES WHERE SUCH LOTTERIES ARE AUTHORIZED ELSEWHERE IN THE CONSTITUTION; MAKING THE AMENDMENT SEVERABLE, EFFECTIVE JANUARY 1 OF THE YEAR FOLLOWING ADOPTION AND ENACTMENT AND FOR OTHER PURPOSES
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects our view of the merits of the proposal because this Office has been given no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women'sPolitical Caucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or *Page 6 
include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976);Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277,285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418,798 S.W.2d 34 (1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and *Page 7 
certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. You have changed the language of your proposed ballot title from your last submission to reflect that your own term as Director of the Arkansas Commission on Lotteries and Wagering will not be from January 1, 2007 until December 31, 2016. Instead, your new proposed ballot title states that your term as Director will be from "January 1 of the year following adoption and enactment for a term of ten (10) years. . . ." The actual text of your measure, however, in § 3(b)(1) continues to provide that your term will be from "January 1, 2007 through December 31, 2016." Obviously, the first date has already passed. This leads to an ambiguity in the text of your measure. This ambiguity is compounded by your changes to Section 4(f)(1) of your measure, which requires the commissioners elected by congressional district to select a new director "[a]fter the expiration of the initial director's term, or ten years following adoption and enactment. . . ." Even if the language of your measure in § 3(b)(1) were updated to reflect the term you apparently intend, an ambiguity would nonetheless remain in § 4(f)(1) in that it is unclear whether the words "adoption and enactment" refer to the date of the November general election, or to the effective date of your measure, which would be the January 1 following the election.
 2. An ambiguity arises from the fact that your proposed amendment regulates "charitable bingo" but does not resolve how it will interact with newly adopted Amendment 84 to the Arkansas Constitution, which also addresses this topic. Although the applicable definitions and language of your proposed amendment largely track the language of Amendment 84 with regard to charitable bingo, your amendment would presumably vest all authority to "operate and regulate" charitable bingo in the Arkansas Commission of Lotteries and Wagering rather than in *Page 8 
the General Assembly as under Amendment 84. (Regulation of "raffles" under Amendment 84 would presumably be left to the General Assembly.) Amendment 84, however, authorizes the General Assembly to tax charitable bingo. Your amendment does not mention this issue, but states that the General Assembly shall have "no power" to regulate the Commission or its activities. It is unclear, therefore, under your proposed measure, whether the General Assembly would have any continuing power under Amendment 84 to tax charitable bingo.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See,e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure."Roberts v. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted *Page 9 
above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
 DUSTIN McDANIEL Attorney General